[Cite as *State v. Finley*, 2019-Ohio-3891.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | No. 108062 |
| v. | : | |
| JAMESENA FINLEY, | : | |
| Defendant-Appellant. | : | |

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** September 26, 2019

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-09-524977-A

*Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Brian D. Kraft, Assistant Prosecuting Attorney, *for appellee.*

Mark A. Stanton, Cuyahoga County Public Defender, and Robert Blanshard McCaleb, Assistant Public Defender, *for appellant.*

FRANK D. CELEBREZZE, JR., J.:

{¶ 1} Defendant-appellant, Jamesena Finley ("appellant"), brings the instant appeal challenging her convictions for felonious assault and possessing criminal tools. Specifically, appellant argues that her convictions were based on insufficient

evidence and were against the manifest weight of the evidence, and that she was denied the effective assistance of counsel. After a thorough review of the record and law, this court affirms.

## I. Factual and Procedural History

{¶ 2} On June 12, 2009, appellant was indicted in a four-count indictment for offenses in which appellant attacked another female, C.B., who was 15 years old at the time. Appellant was charged with Count 1, felonious assault, in violation of R.C. 2903.11(A)(1), a second-degree felony; Count 2, felonious assault, in violation of R.C. 2903.11(A)(2), a second-degree felony; Count 3, kidnapping, in violation of R.C. 2905.01(A)(2), a first-degree felony; and Count 4, possessing criminal tools, in violation of R.C. 2923.24(A), a fifth-degree felony. Appellant pled not guilty to the indictment. Appellant waived her right to a jury trial and elected to try the case to the bench. A bench trial commenced on January 28, 2010, and concluded on January 29.

{¶ 3} Appellant and C.B. did not like one another and had an ongoing feud that stemmed from C.B. apparently maintaining a friendship with appellant's child's father. On May 31, 2009, C.B., and Anisha Gibson, were driving in Cleveland in Gibson's car and approached the corner of Rudwick Road and Euclid Avenue. They were about to make a left turn onto Euclid Avenue when Gibson's car was surrounded by three other vehicles. These three vehicles boxed in Gibson's car from the front, rear, and left side. Appellant got out of one of the cars, opened up the

passenger door to Gibson's car, and pulled C.B. out of the car by her hair. After appellant pulled C.B. from the car, appellant immediately punched C.B. in the face.

{¶ 4} C.B. and appellant then engaged in a mutual fight. At some point, another female named Martika jumped on C.B. and a mutual fight ensued between C.B. and Martika. All parties were separated.

{¶ 5} A minute after the parties were separated, C.B. went back to Gibson's car, and as she was getting into the car, C.B. was again attacked by appellant. C.B. testified that after appellant swung at C.B.'s head and neck area in an "upward" motion, "[l]ike up coming down." (Tr. 37.) Gibson testified that appellant had a "shiny silver object" in her hand as she swung at C.B. C.B. testified that appellant swung at her, she felt her neck and ear lobe area bleeding. Gibson described the shiny silver object as a blade or razor or box cutter. C.B. and Gibson each testified that after appellant swung at C.B., appellant stated, "I got you leaking now," in an apparent reference to C.B. bleeding.

{¶ 6} Gibson and C.B. then drove off and went to C.B.'s grandmother's house. C.B.'s grandmother called 911, and emergency medical services and Cleveland police arrived at the house. C.B. was taken to Huron Hospital where she received "butterfly"[1] stitches for the wounds on her neck and ear lobe.

{¶ 7} On behalf of the state's case, C.B., C.B.'s mother, Gibson, and three Cleveland police officers testified. Appellant, appellant's mother, and aunt testified

---

[1] Butterfly stitches are adhesive strips that are commonly used to close small wounds.

in her defense. Appellant testified that she had nothing to do with the attack. Appellant testified that as of May 31, 2009, she was four months pregnant and was diagnosed as a high-risk pregnancy and was bedridden.

{¶ 8} The trial court took the matter under advisement and announced its verdict on February 3, 2010. The trial court found appellant guilty on both counts of felonious assault, and possession of criminal tools, and not guilty of kidnapping. On March 5, 2010, the trial court sentenced appellant to two years community control sanctions. The trial court terminated appellant from community control sanctions on April 19, 2012.

{¶ 9} Thereafter, appellant sought leave to file a delayed appeal and filed a notice of appeal on May 8, 2018. *State v. Finley*, 8th Dist. Cuyahoga No. 107169. Appellant argued that her delayed appeal was proper because the trial court failed to inform her of her appellate rights at sentencing in violation of Crim.R. 32(B)(1) and (3). This court granted appellant's delayed appeal on May 10, 2018. *See* motion No. 517369. However, on November 27, 2018, this court dismissed appellant's appeal for lack of a final, appealable order due to the trial court's imposition of a blanket sentence — failing to impose a sentence on each individual count. *See* motion No. 522994. The trial court issued a journal entry on December 19, 2018, correcting its blanket sentence error and sentenced appellant to two years community control sanctions on each felonious assault count and possessing criminal tools, and ran them concurrently. The trial court further noted that

appellant had successfully completed the terms of her community control and discharged her sentence.

{¶ 10} Appellant then filed the instant appeal on January 2, 2019. This court granted appellant's motion to transfer the brief from *Finley*, 8th Dist. Cuyahoga No. 107169. Appellant assigns three errors for our review.

I.  There was insufficient evidence to permit the trier of fact to find beyond a reasonable doubt that [appellant] committed felonious assault or possessed criminal tools.

II.  [Appellant's] convictions were against the manifest weight of the evidence.

III.  [Appellant's] trial lawyer rendered constitutionally ineffective assistance of counsel at trial.

## II. Law and Analysis

{¶ 11} As an initial matter, we note that appellant has completed her sentence in the instant case. However, appellant's appeal is not necessarily moot simply because she has completed her sentence and has been discharged by the trial court. As the Ohio Supreme Court has previously noted,

> Given the numerous adverse collateral consequences imposed upon convicted felons, it is clear to us that a person convicted of a felony has a substantial stake in the judgment of conviction which survives the satisfaction of the judgment imposed upon him or her. Therefore, an appeal challenging a felony conviction is not moot even if the entire sentence has been satisfied before the matter is heard on appeal. The collateral legal consequences associated with a felony conviction are severe and obvious. Thus, a convicted felon, who has completed his or her sentence during the pendency of an appeal from the felony conviction, need not present evidence that he or she will suffer some collateral legal disability or loss of civil rights in order to maintain the appeal.

*State v. Golston*, 71 Ohio St.3d 224, 227, 643 N.E.2d 109 (1994). As such, we will address the merits of appellant's appeal.

## A. Sufficiency

{¶ 12} In appellant's first assignment of error, she argues that her convictions were based upon insufficient evidence.

> The test for sufficiency requires a determination of whether the prosecution met its burden of production at trial. *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 12. An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Murphy*, 91 Ohio St.3d 516, 543, 747 N.E.2d 765 (2001). "'The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Walker,* 150 Ohio St.3d 409, 2016-Ohio-8295, 82 N.E.3d 1124, ¶ 12, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

*State v. Keller*, 8th Dist. Cuyahoga No. 106196, 2018-Ohio-4107, ¶ 19.

{¶ 13} Appellant was convicted of felonious assault in Counts 1 and 2, pursuant to R.C. 2903.11(A)(1) and (2). The elements of felonious assault are set forth generally in R.C. 2903.11, which provides, in pertinent part: "(A) No person shall knowingly do either of the following: (1) Cause serious physical harm to another * * *; (2) Cause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance."

{¶ 14} In support of appellant's argument that her convictions for felonious assault were not based on sufficient evidence, she argues that the state did not

present sufficient evidence that C.B. suffered "serious physical harm" as required in Count 1. Appellant similarly argues that the state did not present sufficient evidence that C.B. suffered harm by means of a "deadly weapon" as required in Count 2. Therefore, we will constrain our review of appellant's convictions to only these elements of felonious assault.

## 1. Serious Physical Harm

{¶ 15} With regard to her "serious physical harm" argument, appellant argues that C.B. did not receive stitches for the injury to her ear lobe and neck, and did not demonstrate that either scar on her ear lobe and neck were permanent. Further, appellant argues that there was no medical testimony presented at trial, and C.B. did not seek medical attention on her own. For all these reasons, appellant argues that her conviction for felonious assault, as to Count 1, was based on insufficient evidence because the state failed to present evidence of "serious physical harm."

{¶ 16} As an initial matter, we note that C.B.'s actions following the assault have no relevance to our sufficiency analysis. C.B. was 15 years old at the time of the assault. C.B. instructed Gibson to drive her to her grandmother's house following the assault apparently because of the close proximity as to where the assault occurred in relation to her grandmother's house. Moreover, to the extent that appellant argues that C.B. did not call 911 herself and she only sought medical attention because her grandmother instructed her to, these facts have no relevance to our sufficiency analysis regarding "serious physical harm."

{¶ 17} Furthermore, to the extent that appellant argues that there was "no medical testimony," we disagree. The state offered C.B.'s medical records as an exhibit and these records were available for the trial court to consider during its deliberations.

{¶ 18} In order to prove the element of "serious physical harm," the state was required to present evidence of any of the following:

(a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;

(b) Any physical harm that carries a substantial risk of death;

(c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;

(d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;

(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.

R.C. 2901.01(A)(5). For an injury to constitute "serious physical harm," it must fall within at least one of these five categories.

{¶ 19} This court has noted that "'[t]he degree of harm that rises to the level of 'serious' physical harm is not an exact science'" given that the definition uses terms such as "substantial," "temporary," "acute" and "prolonged." *State v. Miller*, 8th Dist. Cuyahoga No. 98574, 2013-Ohio-1651, ¶ 18, quoting *State v. Irwin,* 7th Dist. Mahoning No. 06 MA 20, 2007-Ohio-4996, ¶ 37. "The extent or degree of a victim's injuries is 'normally a matter of the *weight* rather than the sufficiency of the

evidence.'" (Emphasis added.) *State v. Henry*, 8th Dist. Cuyahoga No. 102634, 2016-Ohio-692, ¶ 41, quoting *Irwin* at ¶ 37.

{¶ 20} In considering whether the record supports the trial court's finding that C.B. sustained "serious physical harm," we note that this court has "'historically applie[d] a liberal interpretation of "serious physical harm" to persons.'" *Henry* at ¶ 41, quoting *State v. Davis*, 8th Dist. Cuyahoga No. 81170, 2002-Ohio-7068, ¶ 20.

{¶ 21} In the instant case, C.B. and Gibson each testified that C.B. was bleeding severely. C.B. stated "I looked down and my shirt and my jeans had blood-like stains dripping and I still was bleeding." (Tr. 39.) C.B. further testified that she had a fear that she would die from the loss of blood. C.B. added that "there was so of [sic] blood flowing, coming out much my neck, I didn't know what to think. I was scared. I've never been injured like that ever in life. And I was just scared of how much blood I was really losing." (Tr. 64.)

{¶ 22} Gibson also added that she saw "blood rushing down [C.B.'s] neck." (Tr. 120.) Gibson further added that she "didn't really get a good look at [the cut] until we made it to her grandmother['s] house, but I know there was blood rushing down her neck. And when we got to her grandmother['s] house[,] there was a cut like a big gash in her side like behind her ear about like an inch long." (Tr. 120.)

{¶ 23} In addition, the trial court noted C.B.'s scar on her neck and earlobe on the date of C.B.'s testimony in January 2010 approximately eight months after the assault.

> [PROSECUTOR]: All right. Do you have any scarring today from either of those?
>
> [C.B.]: Yes, I do.
>
> [PROSECUTOR]: All right. And if you could show the [judge] where any of the scars are on your —
>
> THE COURT: I see on your neck. Is there some on your —
>
> [C.B.]: It's right here.
>
> THE COURT: Okay. I see it.

(Tr. 43-44.) As such, the trial court noted that C.B. had scarring on her ear lobe and neck on the date of her testimony at trial.

{¶ 24} In support of her argument that C.B.'s injuries did not amount to "serious physical harm," appellant directs this court's attention to *State v. Enovitch*, 8th Dist. Cuyahoga No. 72827, 1998 Ohio App. LEXIS 3833 (Aug. 20, 1998). At trial, the victim in *Enovitch* described his injuries as "a painful swollen ear and a cut over his right eye which required eleven stitches. He stated that there was still a scar over his right eye and that 'the scar will not go away as far as I've been told.'" *Id.* at 5. Enovitch argued on appeal that the victim's injuries did not constitute "serious physical harm" because there was no competent evidence that the scar was permanent.

{¶ 25} This court agreed and noted that other than the victim's statement, there was no evidence that the scar above the victim's eye was permanent. This court further noted:

> [t]here is no evidence as to who told him the scar would not go away or that the person was qualified to make such a determination. The hospital records described his injury as just over 1.5 centimeters in length and as a "burst-type injury, clean, shallow, not particularly jagged." The hospital discharge instructions characterized the injury as "minor." Based upon the evidence presented, we conclude that [the victim's] injury did not constitute the serious physical harm required for a felonious assault conviction.

*Id.* at 6.

{¶ 26} In our review of the record, we find *Enovitch* factually distinguishable from the instant case. First, we note that this court has previously factually distinguished *Enovitch* in *State v. Whittsette*, 8th Dist. Cuyahoga No. 85478, 2005-Ohio-4824. In *Whittsette,* the victim testified that Whittsette struck him in the head with a gun while the victim and a group of people were standing in a night club parking lot. The blow caused gashes on the victim's head. A police officer working security at the night club witnessed the attack and testified that the victim and Whittsette wrestled on the ground over the gun and the victim's blood was everywhere. *Id.* at ¶ 20. The officer "immediately dove on the men and wrestled Whittsette until the gun fell from his hands." *Id.* at ¶ 4. However, the victim did not seek medical treatment because he did not have medical insurance. *Id.* at ¶ 20. Nevertheless, this court upheld Whittsette's conviction for felonious assault even though the victim did not seek medical attention. *See also State v. Norman*, 8th Dist. Cuyahoga No. 85938, 2005-Ohio-6018 (also factually distinguishing *Enovitch* due to the victim sustaining numerous facial and neck lacerations with a visible scar).

{¶ 27} Appellant also argues that the butterfly stitches that C.B. received at Huron Hospital do not amount to serious physical harm. To this end, appellant argues that butterfly stitches are not the same as sutures, or more traditional stitches, which would require actual incisions of thread to close up the wound.

{¶ 28} As a general matter, "[t]his court has consistently held that the need for stitches constitutes serious physical harm for purposes of a felonious assault conviction." *State v. Studgions*, 8th Dist. Cuyahoga No. 94153, 2010-Ohio-5480, ¶ 10, citing *State v. Churchwell*, 8th Dist. Cuyahoga No. 88171, 2007-Ohio-1600, ¶ 28. This court has also "repeatedly held that the element of serious physical harm is satisfied when the evidence shows that the victim sustained injuries requiring medical treatment, including stitches." *State v. Williams*, 8th Dist. Cuyahoga No. 98210, 2013-Ohio-573, ¶ 19.

{¶ 29} However, we note that this court has found sufficient evidence of serious physical harm where the victim was struck in the head with a beer bottle and received five butterfly stitches. *State v. Day*, 8th Dist. Cuyahoga No. 79095, 2001 Ohio App. LEXIS 5752, 8 (Dec. 20, 2001). Furthermore, this court has also found serious physical harm where a victim did *not* receive stitches but sustained a bloody cut and significant swelling to the face. (Emphasis added.) *See State v. Payne*, 8th Dist. Cuyahoga No. 76539, 2000 Ohio App. LEXIS 3274, 9-10 (July 20, 2000).

{¶ 30} Thus, based on the facts of the instant case — the significant loss of blood, C.B. sought medical treatment and received butterfly stitches, and the

permanent nature of the scar — we find that the state presented sufficient evidence to establish that C.B. sustained a serious physical injury.

{¶ 31} As such, after reviewing the evidence in a light most favorable to the prosecution, we find that the state proved the element of "serious physical harm" beyond a reasonable doubt.

## 2. Deadly Weapon

{¶ 32} With regard to appellant's deadly weapon argument, she argues that there is no evidence that C.B.'s injuries were caused by means of a deadly weapon. *See* R.C. 2903.11(A)(2). Pursuant to R.C. 2923.11(A), a deadly weapon "means any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon."

{¶ 33} Appellant argues that the state failed to present sufficient evidence that the "shiny silver object" was a deadly weapon. To this end, appellant argues that C.B. testified that she did not see the object in appellant's hand. Appellant contends that the only evidence demonstrating a deadly weapon was Gibson's testimony, which was vague, and failed to establish that a deadly weapon was used. We do not agree.

{¶ 34} In our review of Gibson's testimony, we note that she initially stated that when appellant first approached Gibson's vehicle prior to the mutual fight between C.B. and appellant, appellant had an object in her hand. Gibson stated that appellant "had something sharp in her fingers at first when she was at the door of

the car.  She was like reaching in her pocket trying to, I guess, get a blade or something like that." (Tr. 119.)  Gibson added that appellant and C.B. were

> just fighting and stuff, like they just kept on — you could tell that she was looking for a blade and stuff because when [appellant] first ran up the first time, [appellant] was looking for the blade or whatever, and then [appellant and C.B.] started fighting; I guess [appellant] couldn't find it, and the one girl that was with her had hid it or something, but I don't know what it was.

(Tr. 119.)

{¶ 35} Gibson also added that "I thought it was a ring for real until I noticed [C.B.] got cut."  (Tr. 120.)  However, Gibson further testified that the object that appellant had in her hand "was like a little blade" "[b]ecause it was sharp like in [appellant's] hand like in between her fingers."  (Tr. 119.)

{¶ 36} We find this testimony sufficient to establish that a deadly weapon caused C.B.'s injuries.  Although Gibson's testimony did not specifically articulate that a blade or box cutter was in appellant's hand, we find her description of the "shiny silver object" sufficient to establish that it was a deadly weapon.  A reasonable inference can be drawn from the fact that C.B. was severely bleeding as a result of appellant's upward swing, and that the "shiny silver object" was most likely a blade clearly capable of inflicting death.  *See State v. Hawthorne*, 8th Dist. Cuyahoga No. 96496, 2011-Ohio-6078, ¶ 11 (where this court upheld a conviction for felonious assault with a deadly weapon where the victim testified that she saw the defendant approach her with a black box cutter in her hand).  A box cutter is certainly adaptable as a deadly weapon.  *Id.*

{¶ 37} Further, this object was clearly used or adapted as a weapon as both Gibson and C.B. testified that appellant swung at C.B.'s head and neck with the object in her hand. Although this "shiny silver object" was not recovered, it was clearly used as a weapon as evidenced by the severe bleeding and scar on C.B.'s neck.

{¶ 38} As such, after reviewing the evidence in a light most favorable to the prosecution, we find that the state proved the element of "deadly weapon" beyond a reasonable doubt.

### 3. Possessing Criminal Tools

{¶ 39} Appellant also argues that her conviction for possessing criminal tools was also based on insufficient evidence. For the reasons set forth in our analysis of appellant's conviction for felonious assault by means of a deadly weapon, we find appellant's arguments without merit.

{¶ 40} Pursuant to R.C. 2923.24(A), "[n]o person shall possess or have under the person's control any substance, device, instrument, or article, with purpose to use it criminally."

{¶ 41} For the reasons set forth in our analysis of appellant's conviction for felonious assault by means of a deadly weapon, we similarly find that appellant's conviction for possessing criminal tools — the "shiny silver object" — was also based on sufficient evidence.

{¶ 42} Accordingly, appellant's first assignment of error is overruled.

## B. Manifest Weight

{¶ 43} In his second assignment of error, appellant also contends that her convictions were against the manifest weight of the evidence.

{¶ 44} A manifest weight challenge questions whether the state met its burden of persuasion. *Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, at ¶ 12. A reviewing court "'weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). "A conviction should be reversed as against the manifest weight of the evidence only in the most 'exceptional case in which the evidence weighs heavily against the conviction.'" *State v. Burks*, 8th Dist. Cuyahoga No. 106639, 2018-Ohio-4777, ¶ 47, quoting *Thompkins* at 387.

{¶ 45} In support of her manifest weight argument, appellant argues that C.B.'s and Gibson's testimony was rife with inconsistences, and as such, their testimony lacked credibility.

{¶ 46} Appellant argues, for instance, that C.B. was not able to identify the female who first ran out into the street prior to the three cars boxing in Gibson's vehicle. Appellant also argues that C.B. denied meeting Martika prior to the day of the assault but then later C.B. said she had a prior incident with Martika. Appellant

also argues that C.B. "refused to admit that [appellant] was visibly pregnant" on the day of the assault.

{¶ 47} We fail to see how any of these alleged inconsistences demonstrate that appellant's convictions for felonious assault and possessing criminal tools were against the manifest weight of the evidence. These alleged inconsistencies all pertain to background facts of the instant case. Even if we were to agree with appellant regarding these inconsistencies, the fact remains that Gibson and C.B. both testified consistently as to the second attack on C.B. Gibson and C.B. both stated that appellant had an object in her hand and swung at C.B. in the head and neck area. C.B. stated that appellant rushed up on her with her fist "balled up," however, C.B. did not see an object in appellant's hand. Gibson did see the "shiny silver object" in appellant's hand and noted that the object "was like a little blade" "because it was sharp like in [appellant's] hand like in between her fingers." (Tr. 119.)

{¶ 48} Based on our review of the evidence, we find that appellant's convictions were not against the manifest weight of the evidence. We cannot say that this is "an exceptional case" in which the trial court clearly lost its way and created such a manifest miscarriage of justice that appellant's conviction was against the manifest weight of the evidence. *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541. Appellant's convictions are not against the manifest weight of the evidence simply because there may be perceived inconsistencies with certain witnesses' testimony concerning background facts. The trial court, as the trier of fact, had

sufficient information and was in the best position to weigh the credibility of the witnesses. Furthermore, the trial court "was free to believe all, part, or none of the testimony of each witness." *State v. Colvin*, 10th Dist. Franklin No. 04AP-421, 2005-Ohio-1448, ¶ 34; *State v. Smith*, 8th Dist. Cuyahoga No. 93593, 2010-Ohio-4006, ¶ 16.

{¶ 49} Appellant's second assignment of error is overruled.

### C. Ineffective Assistance of Counsel

{¶ 50} In appellant's third assignment of error, she argues that she was denied the effective assistance of counsel at trial.

{¶ 51} To establish that one's counsel was ineffective, a defendant must demonstrate: (1) deficient performance by counsel, i.e., performance falling below an objective standard of reasonable representation, and (2) counsel's errors prejudiced the defendant, i.e., a reasonable probability that but for counsel's errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraphs two and three of the syllabus.

{¶ 52} Appellant argues that her trial counsel's failure to make a single objection to purported hearsay statements demonstrates that her counsel's performance was deficient. We do not agree.

{¶ 53} As a general matter, we must "indulge in a strong presumption that trial counsel's conduct falls within the wide range of reasonable professional

assistance and that debatable trial tactics and strategies do not constitute a denial of effective assistance of counsel." *State v. Lenard*, 8th Dist. Cuyahoga Nos. 105342 and 105343, 2018-Ohio-4847, ¶ 30, citing *State v. Clayton*, 62 Ohio St.2d 45, 402 N.E.2d 1189 (1980). In this way, "[a] reviewing court will strongly presume that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *State v. Pawlak*, 8th Dist. Cuyahoga No. 99555, 2014-Ohio-2175, ¶ 69.

{¶ 54} Even if appellant's trial counsel had offered objections to the purported hearsay statements, this matter was tried to the bench. Therefore, we presume, unless affirmatively shown otherwise, that the court only considered all the testimony for proper purposes. *State v. Wingfield*, 8th Dist. Cuyahoga No. 107196, 2019-Ohio-1644, ¶ 38, citing *State v. Colegrove*, 8th Dist. Cuyahoga No. 102173, 2015-Ohio-3476, ¶ 22.

{¶ 55} To the extent that appellant also argues that her counsel's performance was deficient because her trial counsel has been subsequently suspended indefinitely from the practice of law in Ohio due to substance abuse, we do not find this fact dispositive. Appellant argues that no direct evidence shows that appellant's counsel's addiction compromised his performance in the instant case, but, the general timeframe in which appellant's counsel admitted to using alcohol and opiates fell within his representation of appellant, including the trial in January 2010.

{¶ 56} Appellant's trial counsel, John Lemieux was suspended indefinitely from the practice of law in Ohio. *Cleveland Metro. Bar Assn. v. Lemieux*, 139 Ohio St.3d 320, 2014-Ohio-2127, 11 N.E.3d 1157. The Ohio Supreme Court noted that

> Lemieux engaged in multiple acts of misconduct by accepting legal fees from clients and failing to perform the work, failing to reasonably communicate with his clients during their representation, failing to maintain a client trust account, and issuing solicitation letters that were misleading because they gave the impression that he worked for a firm with multiple lawyers, when in fact he was a solo practitioner.

*Id.* at ¶ 42. We do not see a correlation between the alleged conduct in the disciplinary matter and appellant's ineffective assistance of counsel claims now on appeal.

{¶ 57} After review, we find no merit to this argument that appellant was denied the effective assistance of counsel. Based on our resolution of appellant's first and second assignments of error, appellant cannot establish that her trial counsel's performance was deficient for failing to make any objections to purported hearsay statements.

{¶ 58} Appellant's third assignment of error is overruled.

### III. Conclusion

{¶ 59} Appellant's convictions for felonious assault and possessing criminal tools were not based on insufficient evidence and are not against the manifest weight of the evidence. Appellant was not denied the effective assistance of counsel. Appellant's convictions are affirmed.

{¶ 60} Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
FRANK D. CELEBREZZE, JR., JUDGE

SEAN C. GALLAGHER, P.J., CONCURS;
PATRICIA ANN BLACKMON, J., DISSENTS IN PART WITH SEPARATE OPINION

PATRICIA ANN BLACKMON, J., DISSENTING IN PART:

{¶ 61} I respectfully dissent in part. Because I conclude that the state presented insufficient evidence to establish that appellant used a "deadly weapon" within the meaning of R.C. 2923.11, I dissent from that portion of the majority's decision affirming the convictions for felonious assault under R.C. 2903.11(A)(2) (knowingly cause or attempt to cause physical harm by means of a deadly weapon) and possession of criminal tools under R.C. 2923.24.

{¶ 62} A deadly weapon is defined in R.C. 2923.11 as "any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon."

{¶ 63} R.C. 2923.24 prohibits individuals from possessing or having under their control "any substance, device, instrument, or article, with purpose to use it criminally."

{¶ 64} To establish these offenses, the state alleged that appellant had a "box cutter and/or razor blade." However, after reviewing the witnesses' testimony, I do not believe that a rational trier of fact could have found these essential elements proven beyond a reasonable doubt. C.B. admitted that she did not see the item and could not decipher what the item may have been. Gibson described the item as lightweight and shiny and stated that she initially thought that she believed that the item was a ring, until she saw that C.B. was cut. By the time of trial, she described it as a "little blade." It was not introduced into evidence.

{¶ 65} In *State v. Duganitz*, 76 Ohio App.3d 363, 601 N.E.2d 642 (8th Dist.1991), this court found that the state failed to establish beyond a reasonable doubt that Duganitz knowingly carried or had a deadly weapon. This court stated:

> [There are] competing constructions of the evidence that establish a reasonable doubt as to whether the appellant knowingly carried or had the weapon. It is a competing construction of the evidence, which is just as plausible, that the passenger had the weapon and the appellant had no knowledge of it. This court must be clear to point out that this is not an attempt to make the evidence irreconcilable with any reasonable theory of innocence. It is, instead, an evaluation of the competing constructions of the evidence to determine whether each and every element of the crimes was proven beyond a reasonable doubt. In so doing, we must conclude that it was not proven beyond a reasonable doubt that the appellant knowingly carried or had the weapon.

*Id.* at 368.

{¶ 66} I cannot conclude that it was "any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon," or even that it was a device purposefully used in a criminal fashion. If the object was a ring, as Gibson initially believed, this object is not per se capable of inflicting death and there is no evidence that it was designed or specifically adapted for use as a weapon, or that the defendant possessed, carried, or used it as a weapon. Rather, she could have simply been wearing a protruding ring during the altercation.

{¶ 67} Accordingly, I respectfully dissent in part.