[Cite as *State v. Alwan*, 2025-Ohio-1366.]

**COURT OF APPEALS OF OHIO**

**EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA**

STATE OF OHIO,                              :

      Plaintiff-Appellee,           :

      v.                                      :

HASSAN ALWAN                          :

      Defendant-Appellant.       :

No. 114168

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** April 17, 2025

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-24-688486-A

---

***Appearances:***

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, Kyle Dillon and Courtney Kirven, Assistant Prosecuting Attorneys, *for appellee.*

Cullen Sweeney, Cuyahoga County Public Defender, and Michael V. Wilhelm, Assistant Public Defender, *for appellant.*

WILLIAM A. KLATT, J.:

{¶ 1} Defendant-appellant Hassan Alwan ("Alwan") appeals from his conviction for felonious assault. For the following reasons, we affirm.

**Factual and Procedural History**

{¶ 2} On April 18, 2023, in Cuyahoga C.P. No. CR-22-676476-A, a Cuyahoga County Grand Jury indicted Alwan on one count of felonious assault in violation of R.C. 2903.11(A)(1), a felony of the second degree. This charge arose from an incident that took place on September 29, 2022. That case was set for a jury trial on January 22, 2024. Because the complaining witness was unavailable for the scheduled trial, the State filed a motion to continue. Alwan opposed this motion, and on the scheduled trial date, the court denied the State's motion. The State moved to dismiss the case without prejudice, the trial court granted this motion, and the case was dismissed without prejudice.

{¶ 3} On February 5, 2024, in Cuyahoga C.P. No. CR-24-688486, Alwan was reindicted in the underlying case. This case proceeded to a jury trial on April 17, 2024.

{¶ 4} The incident at issue in this case took place at the Soccer Sportsplex in North Olmsted, Ohio, on September 28, 2022. That day, two teams were playing an adult recreational soccer game.

{¶ 5} The State called two witnesses at trial. The first witness, victim Federico Chalupa ("Chalupa"), testified that he was 42 years old and had been playing soccer since childhood. Chalupa testified that on the date of the incident, he was playing in a game for a recreational team for which he had played for five to ten years. Chalupa testified that the game was "a little chippy" and at the time of the incident, there were "probably no more than 10 minutes left in the game" and

Chalupa's team was losing by a score of around "eight to one." Chalupa described the specific altercation as follows:

> I was a forward and I was trying to press the defense to keep the ball in the zone, and I arrived there a little late.
>
> I made contact with [Alwan], and turned around upfield to — because he had kicked it upfield to continue play. And as — after I turned around, I felt a kick on my backside, and so I turn around and pushed [Alwan] to be, like — you know, I said "Why did you just kick me?"
>
> And then next thing I know, I have to defend myself. I'm getting punched in the face.
>
> I tried to — I put my hand up to try to block, but I'm not a fighter, and I was slow and it went around my arm there and it hit me in the face. And I kind of took a step towards him to – to kind of defend myself at that point. Then I took a step back, because he made this weird motion; he turned around. And the next thing I know, I'm getting kicked in the head.

{¶ 6} Chalupa testified that the date of the incident was the first time that his team had played Alwan's team, and he had never met Alwan prior to this game. Chalupa identified Alwan at trial. Chalupa testified that after the incident, he drove himself to the hospital and then to a different location with an emergency room. At the ER, the laceration on Chalupa's forehead was treated with five stitches. Chalupa testified that ER personnel asked him if he wanted a head scan, and he declined.

{¶ 7} Chalupa testified that the morning after the incident, he called the police to see if he could make a report about the incident. The following day, he went to the station and filed a police report. The State introduced several photographs of Chalupa's injury that were taken when he filed the police report.

{¶ 8} According to Chalupa, in the days following the incident, he experienced headaches, nausea, and was having trouble sleeping. He went on a previously scheduled trip out of state. Upon returning, he made a doctor's appointment. Chalupa testified that his doctor was concerned with his lack of sleep and headaches and prescribed an antidepressant. Chalupa was unsatisfied with this solution and sought a second opinion from the neurology department at the Cleveland Clinic, where he was diagnosed with post-concussion syndrome. Chalupa testified that he underwent an MRI and began cognitive behavioral therapy and acupuncture.

{¶ 9} Chalupa testified that prior to the incident at issue in this case, he had suffered five to seven concussions, most sustained while playing soccer. Chalupa had his first concussion at the age of ten, which resulted in getting "knocked out for 10 seconds." He also experienced a seizure after a head-to-head collision while playing soccer that "was pretty bad." For these previous concussions, Chalupa treated them by getting some rest and taking Tylenol. According to Chalupa, the incident in this case was the first time that he had any lingering side effects from a concussion.

{¶ 10} On cross-examination, Chalupa testified that he filed a civil suit against Alwan for money damages.

{¶ 11} Officer Joseph Ganelli ("Ganelli") also testified at trial. Ganelli testified that he was a police officer in North Olmsted and his role within the department was a field training officer ("FTO"). Ganelli explained that in his role as

an FTO, he was training a new officer in September 2022, when Chalupa came into the police department to make a report. Ganelli testified that on October 7, 2022, he and another officer went to Alwan's house to speak with him about the incident. Alwan subsequently went into the police station and filled out a written statement about the incident.

{¶ 12} Alwan's witness statement described the incident, stating that Alwan got hit on his injured foot and shoved to the ground; Alwan subsequently got up and tripped the other player — Chalupa — out of frustration. Alwan's statement asserts that Chalupa then charged at Alwan and attempted to hit him, so Alwan hit Chalupa; Chalupa again charged at Alwan, so Alwan performed a spinning kick on Chalupa.

{¶ 13} Ganelli testified that because Chalupa's and Alwan's respective versions of events contradicted each other, he and another officer followed up by visiting the Soccer Sportsplex and obtaining security footage of the incident. Ganelli testified that after viewing footage of the incident, he concluded that Alwan's version of events differed slightly from what was captured on video; specifically, Alwan did not describe kicking Chalupa in his rear end. On cross-examination, Ganelli acknowledged that while Alwan did not describe himself kicking Chalupa in his witness statement, he did state that he tripped Chalupa, and upon rewatching the video of the incident, Ganelli stated that he disagreed with the characterization of the contact but acknowledged that it was mentioned in Alwan's witness statement.

{¶ 14} The State played two videos of the incident at trial. Both videos were security footage from the Soccer Sportsplex and showed the incident from two different angles; both videos are around 30 seconds.

{¶ 15} At the close of the State's case, defense counsel made a Crim.R. 29 motion for acquittal. Defense counsel specifically argued that the State presented insufficient evidence to prove that Alwan was not acting in self-defense, given that the first strike in the incident was a kick from Chalupa, and Alwan "gave him a tit-for-tat back" and was proceeding up the field when Chalupa turned around and engaged Alwan further, at which point Alwan punched and kicked Chalupa in the face in self-defense.

{¶ 16} The court denied Alwan's Crim.R. 29 motion, and the defense proceeded with its case. Alwan testified on his own behalf. Alwan testified that the game was a blowout, and after Alwan's team had scored about five or six goals, Chalupa's team became much more physical. Alwan described "a lot of more late tackles, more obstruction to the point where, you know, people warring multiple times throughout the game." Alwan testified that before the incident with Chalupa, there was an incident where another player on Alwan's team suffered a significant injury. Alwan testified that he had received several late hits from Chalupa before the incident at the heart of this case, and he verbally warned Chalupa to get him to stop.

{¶ 17} With respect to the incident from which this case arises, Alwan testified that Chalupa kicked him in an inappropriate way, given that Alwan had

clearly passed the ball to another player before Chalupa kicked him. Further, Alwan

testified:

> DEFENSE COUNSEL: So once [Chalupa] did this, came in and slide tackled you or whatever that's called, excuse my soccer ignorance, then you came up and what did you do?
>
> ALWAN: I called it trip him or clipped his foot, you know. I know it shows that I kicked towards his rear end, but my intention was just to get his attention, like, hey, you know, like, I warned you about this. We all got to work in the morning. It's not worth it. So out of just that frustration, I just tried to get his attention by tripping his foot or kicking it, as they described it.
>
> DEFENSE COUNSEL: Were you intending to [cause] him physical harm when you did this?
>
> ALWAN: Not at all.
>
> DEFENSE COUNSEL: Now once you kick him, I want you to tell me what happens in that brief second before he turns around.
>
> . . .
>
> ALWAN: Well, we were walking towards the ball to continue the play, you know, but then he turned around and put his hands on — on my shoulder.
>
> DEFENSE COUNSEL: So take me through that part then.
>
> ALWAN: It was so quick so, you know, I — apparently, he turned around, he attempted to push me, but I stood, you know, solid. Then I felt his hand on me, so at that point, you know, it just switched from a soccer match to, hey, this guy's trying to cause me some kind of physical harm, so I struck him and backed away.
>
> . . .
>
> DEFENSE COUNSEL: Now when you back away, what does he do?
>
> ALWAN: He continues to step towards me and go like this (indicating) and, you know, shout out profanity and, you know, it didn't look like he — he wanted to stop. I was surrounded by red jerseys, you know. I kept

backing away, trying to avoid, you know, any further incident, and he was just coming at me, you know.

. . .

DEFENSE COUNSEL: Is that what we see here at 11 seconds?

ALWAN: Yes.

DEFENSE COUNSEL: His hands are up?

ALWAN: Yes.

DEFENSE COUNSEL: Now he comes towards you. He comes towards you. You see that in the video?

ALWAN: Mhmm.

DEFENSE COUNSEL: What happens next?

ALWAN: I spun and, you know, I — I kicked him and he ducked down and, you know, impact was made.

DEFENSE COUNSEL: Now after you kicked him, did you pursue him?

ALWAN: Not at all.

DEFENSE COUNSEL: What did you do?

ALWAN: Continued to back away.

Alwan testified that throughout the video, he was backing up "to avoid further conflict."

{¶ 18} The defense rested, and defense counsel renewed its Crim.R. 29 motion. The court again denied the motion.

{¶ 19} On April 19, 2024, the jury found Alwan guilty of felonious assault.

{¶ 20} On May 3, 2024, new counsel for Alwan filed a motion for a new trial pursuant to Crim.R. 33. The basis for this motion was that Alwan's trial counsel

provided ineffective assistance of counsel. Specifically, the motion alleged that trial counsel failed to disclose his friendship with Chalupa and his wife, which constituted a conflict of interest; trial counsel misrepresented Chalupa's actions at trial thereby undermining the defense's credibility with the jury; trial counsel exhibited a lack of diligence by failing to subpoena two of Alwan's teammates who had provided statements; and trial counsel disregarded Alwan's wish to have the initial case dismissed with prejudice rather than without prejudice and his request to cross-examine Chalupa about his marijuana usage.

{¶ 21} On May 22, 2024, the State filed a brief in opposition to the motion for a new trial. On May 29, 2024, Alwan filed a reply brief in support of his motion.

{¶ 22} On June 21, 2024, the court denied Alwan's motion for a new trial and proceeded to sentencing. The court sentenced Alwan to one year of community-control sanctions. Alwan filed a timely notice of appeal and presents four assignments of error for our review:

> I. The State of Ohio did not present sufficient evidence of "serious physical harm" during Mr. Alwan's trial.
>
> II. The conviction was against the manifest weight of the evidence where the State did not prove a causal link between the fight and the victim's headaches.
>
> III. Trial counsel was ineffective for failing to adequately pursue his self-defense strategy.
>
> IV. Counsel was ineffective for failing to impeach the victim using the available medical testimony to disprove serious physical harm.

**Law and Analysis**

**I. Sufficiency of the Evidence**

{¶ 23} In Alwan's first assignment of error, he argues that his conviction was not supported by sufficient evidence. Specifically, Alwan argues that the State did not present sufficient evidence at trial that Chalupa suffered "serious physical harm" as a result of the incident with Alwan. Alwan acknowledges that his actions during the scuffle resulted in a laceration requiring stitches, a bruised arm, and a bruised lip for Chalupa. He asserts, however, that these injuries do not constitute serious physical harm and that the State did not present sufficient evidence that Alwan's actions caused "post-concussion syndrome" in Chalupa.

{¶ 24} The test for sufficiency requires a determination of whether the prosecution met its burden of production at trial. *State v. Bowden*, 2009-Ohio-3598, ¶ 12 (8th Dist.). An appellate court's function when reviewing sufficiency is to determine "'whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Leonard*, 2004-Ohio-6235, ¶ 77, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 25} With a sufficiency inquiry, an appellate court does not review whether the State's evidence is to be believed but whether, if believed, the evidence admitted at trial supported the conviction. *State v. Starks*, 2009-Ohio-3375, ¶ 25 (8th Dist.), citing *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). A sufficiency-of-the-evidence argument is not a factual determination, but a question of law. *Thompkins* at 386.

{¶ 26} Proof of guilt may be supported "by circumstantial evidence, real evidence, and direct evidence, or any combination of the three, and all three have equal probative value." *State v. Rodano*, 2017-Ohio-1034, ¶ 35 (8th Dist.).

{¶ 27} Alwan was convicted of felonious assault in violation of R.C. 2903.11(A)(1), which provides that "no person shall knowingly . . . [c]ause serious physical harm to another or to another's unborn." R.C. 2901.01(A)(5) defines "serious physical harm" as:

> (a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;
>
> (b) Any physical harm that carries a substantial risk of death;
>
> (c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;
>
> (d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;
>
> (e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.

{¶ 28} While the definition of serious physical harm is statutorily defined, "[t]he degree of harm that rises to the level of 'serious' physical harm is not an exact science, particularly when the definition includes such terms as 'substantial,' 'temporary,' 'acute,' and 'prolonged.'" *State v. Mason*, 2020-Ohio-4998, ¶ 11 (8th Dist.), quoting *State v. Montgomery*, 2015-Ohio-2158, ¶ 11 (8th Dist.).

{¶ 29} Here, Alwan's sufficiency argument rests on two assertions: that post-concussion syndrome was necessary for a finding of serious physical harm and that

the evidence does not sufficiently establish a link between post-concussion syndrome and the incident in this case.

{¶ 30} We will first address whether post-concussion syndrome was essential for a finding of serious physical harm. In some cases, this court has found that where the victim's injuries are serious enough that they sought medical treatment, it is reasonable for the jury to infer that the force exerted on the victim caused serious physical harm as defined by R.C. 2901.01(A)(5). *Id.*, citing *Montgomery* at ¶ 12. However, the mere fact that a victim sought medical treatment is not necessarily sufficient to establish serious physical harm. *State v. Enovitch*, 1998 Ohio App. LEXIS 3833 (8th Dist. Aug. 20, 1998). Further, this court "'has consistently held that the need for stitches constitutes serious physical harm for purposes of a felonious assault conviction.'" *State v. Finley*, 2019-Ohio-3891, ¶ 28 (8th Dist.), quoting *State v. Studgions*, 2010-Ohio-5480, ¶ 10 (8th Dist.), citing *State v. Churchwell*, 2007-Ohio-1600, ¶ 28 (8th Dist.). Therefore, the fact that Chalupa suffered a laceration on his head requiring stitches, as well as bruising, in addition to other self-reported symptoms such as nausea, headaches, and trouble sleeping, was sufficient for a reasonable factfinder to conclude that Chalupa suffered serious physical harm.

{¶ 31} With respect to whether the State presented sufficient evidence that Chalupa had post-concussion syndrome as a result of the incident in this case, the record reflects that Chalupa's medical records support a conclusion that Chalupa was diagnosed with post-concussion syndrome. Although Chalupa's testimony that

he was diagnosed with post-concussion syndrome at his first medical appointment after the incident was undermined by his medical records showing that the diagnosis came at a later date, this does not undermine the fact that the diagnosis was made. Further, the record reflects that Chalupa was experiencing certain symptoms, such as headaches and nausea, shortly after the incident, but did not report these initially because he just wanted to go home. Viewing the evidence in the light most favorable to the State, there was sufficient evidence for a reasonable factfinder to conclude that Chalupa's post-concussion syndrome resulted from the fight with Alwan.

{¶ 32} For the foregoing reasons, Alwan's first assignment of error is overruled.

## II. Manifest Weight

{¶ 33} In Alwan's second assignment of error, he argues that his conviction was against the manifest weight of the evidence. Specifically, he argues that the State did not establish a causal link between the fight and Chalupa's headaches.

{¶ 34} "Weight of the evidence concerns 'the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. . . . Weight is not a question of mathematics, but depends on its effect in inducing belief.'" *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 12, quoting *State v. Thompkins*, 78 Ohio St.3d 380 at 387. When evaluating a claim that a verdict is against the manifest weight of the evidence, "'we review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the [trier of fact] clearly

lost its way and created such a manifest miscarriage of justice that we must reverse the conviction and order a new trial." *Garfield Hts. v. Poree*, 2025-Ohio-1065, ¶ 6 (8th Dist.), quoting *State v. Wilks*, 2018-Ohio-1562, ¶ 168, citing *Thompkins*. A conviction should be reversed as against the manifest weight of the evidence only in the most "exceptional case in which evidence weighs heavily against conviction." *Thompkins* at 387.

{¶ 35} Alwan argues that there were critical inconsistencies between Chalupa's testimony and his medical records. Specifically, Alwan points out that Chalupa testified that he was diagnosed with post-concussion syndrome at the ER the day after the incident, when he was actually not diagnosed with post-concussion syndrome until weeks later. Further, Alwan emphasizes that despite Chalupa's testimony that he continued to suffer from headaches, his medical records do not support his testimony, nor do they support a conclusion that these headaches were the result of his injuries from Alwan and not some other problem, such as regular marijuana use or untreated depression or anxiety.

{¶ 36} Alwan is correct that the medical records from Chalupa's ER visit immediately following the incident do not support his subsequent diagnosis for post-concussion syndrome. During that visit, Chalupa denied that he was suffering a headache, dizziness, or any other neurological symptoms, and the physician's notes indicate that Chalupa did not have any nausea or back or neck pain and was negative for altered mental status, dizziness, and gait abnormality. Nevertheless, Chalupa was subsequently diagnosed with post-concussive syndrome. Further,

Chalupa's own testimony describes that he was suffering from headaches and sleep trouble after the incident. Alwan's argument implies that Chalupa was perhaps malingering or otherwise exaggerating his symptoms, and he emphasizes the ways in which Chalupa's trial testimony may differ from the medical records introduced at trial. These inconsistencies were fully explored at trial, and the jury was able to hear Chalupa's testimony and consider both his testimony and medical records in its deliberations. Following a thorough review of the record in this case, we cannot conclude that the jury lost its way in resolving these inconsistencies. Therefore, we do not find this to be the exceptional case in which the evidence weighs heavily against conviction and the trier of fact created such a manifest miscarriage of justice that we must reverse the conviction. Therefore, Alwan's conviction was not against the weight of the evidence. Alwan's second assignment of error is overruled.

## III. Ineffective Assistance of Counsel

{¶ 37} In Alwan's third and fourth assignments of error, he argues that his trial counsel was ineffective. In his third assignment of error, he asserts that his trial counsel was ineffective for failing to adequately pursue self-defense as a strategy at trial. In his fourth assignment of error, he argues that his trial counsel was ineffective for failing to impeach the victim's testimony using the available medical testimony to disprove that Chalupa suffered serious physical harm.

{¶ 38} U.S. Const., art. I, § 10 and amend. VI provide that defendants in all criminal proceedings shall have the assistance of counsel for their defense. The United States Supreme Court has recognized that "the right to counsel is the right to

effective assistance of counsel." *Strickland v. Washington,* 466 U.S. 668 (1984). In order to establish a claim of ineffective assistance of counsel, a defendant must prove (1) his counsel was deficient in some aspect of his representation, and (2) there is a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different. *Id.* Our review of ineffective assistance of counsel claims requires us to give great deference to counsel's performance. *Id.* at 689. "A reviewing court will strongly presume that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *State v. Pawlak*, 2014-Ohio-2175, ¶ 69 (8th Dist.).

{¶ 39} Alwan first argues that his counsel was ineffective for failing to adequately pursue self-defense as a strategy at trial. Alwan acknowledges that his trial counsel did pursue self-defense as a strategy at trial, but asserts that there was a "better" way to have pursued this strategy at trial. Based on our thorough review of the record, trial counsel actively pursued a self-defense strategy at trial. He pursued this strategy both during direct and cross-examination of witnesses and in making his Crim.R. 29 arguments to the court. Alwan argues, however, that trial counsel did not go far enough because he did not call any other witnesses, including Alwan's teammates who had provided statements on the incident and the degree of rough play leading up to the incident. Alwan also argues that trial counsel's self-defense strategy did not match the evidence and asserts that counsel should have introduced video footage of the entire game to add more context to the incident.

{¶ 40} The United States Supreme Court noted in *Strickland* that "it is all too tempting for a defendant to second-guess his lawyer after conviction" and likewise that it would be "all too easy for a court, examining an unsuccessful defense in hindsight, to conclude that a particular act or omission was deficient." *State v. Banks*, 2021-Ohio-511, ¶ 3 (8th Dist.), citing *Strickland*. Therefore, appellate courts are required to "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.*

{¶ 41} Furthermore, Ohio courts have consistently held that "'counsel's decision whether to call a witness falls within the rubric of trial strategy and will not be second-guessed by a reviewing court.'" *State v. Fisher*, 2020-Ohio-670, ¶ 20 (8th Dist.), quoting *State v. Pickens*, 2014-Ohio-5445, ¶ 203. Likewise, the general decision to introduce evidence, such as a longer video of the soccer game leading up to the incident in this case, is a matter of trial strategy. *State v. Alexander*, 2005-Ohio-5200, ¶ 27 (8th Dist.).

{¶ 42} Here, Alwan has not overcome the presumption that, under the circumstances, his trial counsel's execution of a self-defense strategy was sound trial strategy. The fact that trial counsel elected not to call certain witnesses or to introduce video evidence of the entire soccer game in pursuit of this strategy was not deficient. Therefore, Alwan's third assignment of error is overruled.

{¶ 43} Alwan's fourth assignment of error argues that his trial counsel was ineffective for failing to impeach the victim's testimony using the available medical testimony to disprove that Chalupa suffered serious physical harm. As in his third

assignment of error, Alwan acknowledges that his argument is not that his trial counsel completely failed to do something — here, to disprove that Chalupa suffered serious physical harm — but that trial counsel failed to do something successfully. Alwan acknowledges that trial counsel cross-examined Chalupa about his injuries to illustrate that Chalupa may have been exaggerating his symptoms, but he argues that this cross-examination would have been *more* effective had trial counsel highlighted various inconsistencies within the evidence.

{¶ 44} "'The extent and scope of cross-examination clearly fall within the ambit of trial strategy, and debatable trial tactics do not establish ineffective assistance of counsel.'" *State v. Morton*, 2021-Ohio-581, ¶ 39 (8th Dist.), quoting *State v. Leonard*, 2004-Ohio-6235, ¶ 146. Specifically, it is outside our role as a reviewing court to "'scrutinize trial counsel's strategic decision to engage, or not engage, in a particular line of questioning on cross-examination.'" *Id.*, quoting *State v. Dorsey*, 2005-Ohio-2334, ¶ 22 (10th Dist.).

{¶ 45} Thus, we do not find that the claimed limitations of trial counsel's cross-examination of Chalupa regarding his medical history amounted to deficient performance by trial counsel. Likewise, we cannot conclude that this amounted to ineffective assistance of counsel. For these reasons, Alwan's fourth assignment of error is overruled.

{¶ 46} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
WILLIAM A. KLATT, JUDGE*

KATHLEEN ANN KEOUGH, P.J., and
DEENA R. CALABRESE, J., CONCUR

(*Sitting by assignment: William A. Klatt, J., retired, of the Tenth District Court of Appeals.)