{¶ 1} Appellant Edgar Churchwell appeals his conviction for felonious assault.
 {¶ 2} Churchwell assigns the following errors for our review:
 "I. The defendant was denied his rights to due process and a fair trial when the court erred in prohibiting his counsel from arguing that the victim's intoxication negatively affected her credibility."
 "II. The jury's verdict, finding the defendant guilty of felonious assault, was against the manifest weight of the evidence."
 {¶ 3} Having reviewed the record and pertinent law, we affirm Churchwell's conviction. The apposite facts follow.
 {¶ 4} On August 31, 2005, the Cuyahoga County Grand Jury indicted Churchwell on two counts of rape, one count each of felonious assault, gross sexual imposition, and kidnapping as a result of an incident that occurred on July 29, 2005, in Cleveland, Ohio. Churchwell pled not guilty at his arraignment, and the case proceeded to a jury trial.
 Jury Trial {¶ 5} At trial, the State presented the testimony of eight witnesses. Patricia Peeples had known Churchwell for approximately six months. On July 29, 2005, she and Churchwell were both homeless; they spent the day at a local park drinking beer.
 {¶ 6} According to Peeples, after she began to feel tired, Churchwell suggested that they go to a lot where he normally camps out underneath tractor trailers. Peeples and Churchwell retired underneath a tractor trailer for about two to *Page 4 
three hours. During this time, they drank more beer, talked, and engaged in consensual sexual intercourse. Churchwell left for work at approximately 10:00 p.m. and Peeples went to sleep underneath the tractor trailer.
 {¶ 7} Sometime after midnight, Peeples was awakened by the sound of Churchwell calling out her name. Churchwell joined her underneath the tractor trailer, where they talked and drank more beer. Churchwell indicated that he wanted to engage in anal sex, but Peeples refused. Peeples stated that Churchwell flipped her over unto her stomach and forced her to have anal sex. Churchwell inserted either his penis or a plastic bottle into Peeples' anus.
 {¶ 8} Peeples stated that after the sexual assault, she felt something hit her in the back of the head and then felt a second strike to the side of her face. Peeples, half naked and bleeding, ran across the street to the BP gas station, located at 30 and Chester Avenue, to seek help. The gas station attendant called for emergency medical assistance.
 {¶ 9} When an ambulance and police arrived, Peeples indicated that Churchwell had assaulted her. Peeples also directed the police to where the tractor trailer was located. The ambulance transported Peeples to Saint Vincent Charity Hospital where she received stitches around her eyes.
 {¶ 10} Kriston Jones and Mary Morehead, the paramedics who responded to the scene, testified that Peeples was screaming hysterically that she had been *Page 5 
raped. Jones and Morehead both testified that Peeples indicated that Churchwell was the perpetrator.
 {¶ 11} Officer Andrew Papaleo, of the Cleveland Police Department, testified that he responded to the BP gas station at approximately 1:30 a.m., where he found Peeples naked from the waist down, bleeding profusely, and hysterical. Peeples indicated that Churchwell was the perpetrator and directed Officer Papaleo to where the tractor trailer was located.
 {¶ 12} Officer Papaleo went across the street to the lot where he found a makeshift campsite underneath one of the tractor trailers. Officer Papaleo also found a pallet with bloody sheets and a bloody brick underneath the tractor trailer. Officer Papaleo testified that he was unable to locate Churchwell anywhere in or around the makeshift campsite.
 {¶ 13} Officer Papaleo testified that he went to the hospital to speak with Peeples and she again indicated that Churchwell was the perpetrator. Peeples also indicated that Churchwell worked as a parking attendant at the Ameritemps parking lot. Officer Papaleo testified that later that morning, he arrested Churchwell at the parking lot.
 {¶ 14} Detective Michael Kovach, of the Cleveland Police Department, testified that in the course of his investigation of this case, he took a statement from Churchwell regarding the incident. Churchwell's statement confirmed that he and *Page 6 
Peeples had spent most of the day talking, drinking beer, and engaging in consensual sex. However, Churchwell denied engaging in anal sex with Peeples.
 {¶ 15} According to Churchwell, when he returned from work at approximately 1:00 a.m., he found Peeples underneath the tractor trailer in the company of another man. Churchwell gathered his clothes and went over to the park at Trinity Cathedral, where he sat around drinking beer with other homeless people.
 {¶ 16} After the State's case in chief, the trial court granted Churchwell's motion for judgment of acquittal on one count of rape and on the count of gross sexual imposition. The jury returned not guilty verdicts on the remaining rape charge and also found Churchwell not guilty of kidnapping. The jury found Churchwell guilty of felonious assault. On April 25, 2006, the trial court sentenced Churchwell to a prison term of three years.
 Evidence of Intoxication {¶ 17} In the first assigned error, Churchwell argues the trial court erred in prohibiting him from arguing that Peeples' intoxication negatively affected her credibility. We disagree.
 {¶ 18} Evid.R. 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without *Page 7 
the evidence."[1] Generally, all relevant evidence is admissible.[2]
However, relevant evidence must be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or of misleading the jury."[3]
 {¶ 19} When the trial court determines that certain evidence will be admitted or excluded from trial, it is well established that the order or ruling of the court will not be reversed unless there has been a clear and prejudicial abuse of discretion.[4] An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.[5]
 {¶ 20} In the instant case, the record refutes Churchwell's contention that he was prevented from arguing that Peeples' intoxication negatively affected her credibility. In his brief to this court, Churchwell cites the following exchange to support his assertion that the trial court prohibited him from arguing Peeples' intoxication:
 "Q. Okay. And, do you have any training in, you, intoxication and evaluating for instance if a driver is intoxicated, that type of thing? *Page 8 
 A. No formal training for that.
 Q. Are you aware of what the legal limit is for a person to be — The Court: Its not an issue in this case. It's not an issue in this case.
 Ms. Martinez-Atzberger: Could we have a sidebar, Your Honor?
 The Court: No. It's not an issue in this case.
 Ms. Martinez-Atzberger: Well, Your Honor, I believe that it may be.
 The Court: The legal limit is not an issue in this case. Please do not argue. Move on."[6]
 {¶ 21} Our review of the above exchange indicates that the trial court was pointing out that the legal limit was not relevant to the case. The trial court did not prohibit Churchwell from raising the issue of Peeples' intoxication. The record is replete with evidence that Peeples had been consuming alcohol prior to her attack. In addition, and prior to the above quoted exchange, Churchwell's trial counsel elicited substantial testimony from Peeples regarding her alcohol consumption on the day of the attack.
 {¶ 22} We conclude on the record before us that sufficient evidence of Peeples' intoxication was presented at trial. Accordingly, we overrule the first assigned error.
 Manifest Weight *Page 9 {¶ 23} In the second assigned error, Churchwell argues that the jury's verdict finding him guilty of felonious assault was against the manifest weight of the evidence. We disagree.
 {¶ 24} When an appellant challenges a conviction on manifest weight grounds, we review the record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, "and determine whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."[7] The discretionary power to grant a new trial should be exercised only in exceptional cases in which the evidence weighs heavily against the conviction.[8]
 {¶ 25} Stated succinctly, a reviewing court will not reverse a conviction where there is substantial evidence upon which the court could reasonably conclude that all elements of an offense have been proven beyond a reasonable doubt.[9]
 {¶ 26} R.C. 2903.11(A), regarding felonious assault, provides that, "[n]o person shall knowingly * * * (1) cause serious physical harm to another * * *; (2) cause *Page 10 
or attempt to cause physical harm to another * * * by means of a deadly weapon
* * *."[10]
 {¶ 27} R.C. 2901.01(A)(5) defines "serious physical harm to persons" as any of the following:
 "(a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;
 "(b) Any physical harm that carries a substantial risk of death;
 "(c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;
 "(d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;
 "(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain."[11]
 {¶ 28} In the instant case, it is undisputed that Peeples suffered serious physical harm. Peeples testified that Churchwell struck her twice in the head, prompting her to flee across the street half naked and bleeding profusely. The paramedics who responded to the scene testified that they found Peeples bleeding profusely and her eyes swollen shut. The paramedics transported her to the hospital where Peeples received stitches around her eyes. A fact finder does not err in *Page 11 
finding serious physical harm where the evidence demonstrates the victim sustained injuries necessitating medical treatment.[12]
 {¶ 29} It is also undisputed that Peeples was struck by a deadly weapon. R.C. 2923.11(A) defines a "deadly weapon" as "any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon." The record reveals that Officer Papaleo discovered a blood-stained brick at the crime scene. Subsequent laboratory tests revealed that it was Peeples' blood on the brick.
 {¶ 30} The record also reveals that Peeples identified Churchwell as the person who attacked her. Both paramedics and Officer Papaleo, who were summoned to the scene, testified that Peeples indicated that Churchwell had attacked her. In addition, Papaleo testified that Peeples directed him to the crime scene, where he discovered the blood-stained brick and bloody sheets.
 {¶ 31} Finally, Detective Kocvach testified that Churchwell provided a written statement which confirmed that he had spent the day with Peeples. In addition, in his statement to Kovach, Churchwell placed himself at the crime scene within minutes of the attack. Detective Kovach testified that Churchwell indicated that he returned to the makeshift campsite at approximately 1:00 a.m. The record reveals *Page 12 
that the paramedics and the police responded to the call between 1:00 a.m. and 1:30 a.m., which is within the time frame that Churchwell admitted to being with Peeples.
 {¶ 32} After reviewing the record before us, we find no miscarriage of justice in this case. Although Churchwell complains that Peeple's testimony is not credible, any credibility issues regarding her testimony were for the trier of fact to decide.[13] Consequently, the jury's verdict finding Churchwell guilty of felonious assault is not against the manifest weight of the evidence. Accordingly, we overrule Churchwell's second assigned error.
Judgment affirmed.
It is ordered that appellee and appellant share the costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANTHONY O. CALABRESE, JR., P.J. and CHRISTINE T. McMONAGLE, J., CONCUR
[1] State v. Sinclair, Cuyahoga App. No. 81437, 2003-Ohio-4337.
[2] Evid.R. 402.
[3] State v. Scott, Cuyahoga App. No. 83477, 2004-Ohio-4631; Evid.R. 403(A).
[4] O'Brien v. Angley (1980), 63 Ohio St.2d 159, 163.
[5] Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
[6] Tr. at 635-636.
[7] State v. Martin (1983), 20 Ohio App.3d 172,175, citing Tibbs v.Florida (1982), 457 U.S. 31, 38, 42. See, also, State v. Thomkins
(1997), 78 Ohio St.3d 380.
[8] Martin, citing Tibbs. See, also, State v. Thomkins (1997),78 Ohio St.3d 380.
[9] State v. Eskridge (1988), 38 Ohio St.3d 56, paragraph two of the syllabus; State v. Eley (1978), 56 Ohio St.2d 169, syllabus.
[10] State v. Oquendo, Cuyahoga App. No. 87913, 2007-Ohio-628.
[11] Id.
[12] State v. Scott, Cuyahoga App. No. 81235, 2003-Ohio-5374. See alsoState v. Davis, Cuyahoga App. No. 81170, 2002-Ohio-7068.
[13] State v. DeHass (1967), 10 Ohio St.2d 230. *Page 1