[Cite as *State v. Wilson*, 2023-Ohio-218.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 111543 |
| v. | : | |
| DAVID WILSON, | : | |
| Defendant-Appellant. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED; REMANDED FOR RESENTENCING
**RELEASED AND JOURNALIZED:** January 26, 2023

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-20-651076-A

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Carla B. Neuhauser, Assistant Prosecuting Attorney, *for appellee*.

P. Andrew Baker, *for appellant*.

KATHLEEN ANN KEOUGH, J.:

{¶ 1} Defendant-appellant, David Wilson, appeals from the trial court's judgment finding him guilty of aggravated assault and domestic violence. We affirm Wilson's convictions but remand for resentencing to merge the convictions as allied offenses.

## I. Background

{¶ 2} Wilson was charged in a two-count indictment. Count 1 charged felonious assault in violation of R.C. 2903.11(A)(1); Count 2 charged domestic violence in violation of R.C. 2919.25(A). Wilson pleaded not guilty and waived his right to a jury trial, and the matter proceeded to trial before the bench.

{¶ 3} Karima McCree-Wilson testified at trial that she is Wilson's daughter. She said that pursuant to a judicially ordered protective order, Wilson is not allowed to be at her house. Nevertheless, on June 7, 2020, Wilson and his friend, Fred Mobley, drove to her house, in a car that belonged to her, to retrieve a lawnmower. Karima said that as Wilson and Mobley were putting the lawnmower in the trunk of the car, she came out of the house and told Wilson he was not allowed to be there, at which point he grabbed her. She testified that, in an effort to get away from Wilson, she got in the car. She said that Mobley entered the car from the passenger side and used his feet to prevent her from driving away, while Wilson tried to pull her out of the car from the driver's side. Karima testified that she bit Wilson in an effort to defend herself and in response, Wilson punched her twice in her face.

{¶ 4} Karima testified that she recorded parts of the encounter on her cell phone; those recordings were played at trial. In addition, two 911 calls from neighbors reporting that a man was assaulting a woman in the face were played at trial.

{¶ 5} Wilson testified that he knew he was not supposed to be at Karima's house when he went there on June 7, 2020. He testified further that he punched

Karima twice in her face after she bit him as he was trying to get her out of the car, causing her lips to become, as he described it, "all fat and swollen." (Tr. 112.) He also testified that prior to this incident, he had sought a protective order against Karima due to various incidents between them. (Tr. 109-110.)

{¶ 6} Despite Wilson and Mobley's interference, Karima managed to drive the car to the middle of the street where she, Wilson, and Mobley waited for the police to arrive. Karima testified that the police arrested Wilson, and she was transported by ambulance to the hospital, where she was diagnosed with a nearly one-quarter inch laceration to her upper lip, a small abrasion on her lower lip, two small abrasions on her forehead, and a facial contusion. She underwent a CT scan, which indicated there were no broken bones in her face or jaw, and received three stitches for the upper lip laceration. Karima's medical records were admitted into evidence at trial.

{¶ 7} The court denied Wilson's Crim.R. 29 motions at the close of the state's case and the end of the trial. The court took the matter under advisement and subsequently rendered a verdict finding Wilson guilty on Count 1 of the inferior offense of aggravated assault and guilty on Count 2 as charged and sentenced him to two years of community control on each count, to be served concurrently. This appeal followed.

## II. Law and Analysis

### A. Aggravated Assault

**{¶ 8}** When rendering its verdict, the court first found Wilson guilty of Count 2, domestic violence, stating, "[t]he evidence supports the allegation the Defendant did knowingly cause physical harm to the victim." (Tr. 135.) Then, with respect to Count 1, the court stated:

> Given the totality of the circumstances, the Court rejects the allegations contained in Count 1.
>
> The Court does, however, find that the relationship between the two, coupled with the fact the Defendant was bitten by the victim and then punched by the Defendant, the Court is satisfied the elements of aggravated assault have been met. And, therefore, finds the Defendant guilty of the inferior offense of agg[ravated] assault.

(Tr. 136.)

**{¶ 9}** In his first assignment of error, Wilson contends that, in light of the trial court's statement that it "rejects the allegations in Count 1," the trial court erred in convicting him of aggravated assault after finding him not guilty of felonious assault.

**{¶ 10}** Wilson was charged in Count 1 with felonious assault in violation of R.C. 2903.11(A)(1), which provides that "no person shall knowingly cause serious physical harm to another." The offenses of aggravated assault and felonious assault are comprised of the same elements, except aggravated assault contains the mitigating element of "serious provocation." Accordingly, aggravated assault is an inferior offense of felonious assault. *See State v. Williams*, 8th Dist. Cuyahoga No. 98210, 2013-Ohio-573, ¶ 21.

{¶ 11} As this court stated in *State v. Martin*, 8th Dist. Cuyahoga No. 106125, 2018-Ohio-1098,

> To be found guilty of aggravated assault as an inferior offense of felonious assault, the trier of fact must first find that the state proved the elements of felonious assault beyond a reasonable doubt. Only then does the trier of fact consider whether the defendant proved the mitigating factor of serious provocation by a preponderance of the evidence. If the trier of fact finds that the defendant proved the mitigating circumstance, then the trier of fact can find a defendant guilty of aggravated assault. *See State v. Ruppart*, 187 Ohio App.3d 192, 2010-Ohio-1574, 931 N.E.2d 627, ¶ 33-38 (8th Dist.), citing 2 Ohio Jury Instructions, Section 503.11(A)(14) (2009).

*Id*. at ¶ 13.

{¶ 12} In *Martin*, which involved a bench trial, the trial court expressly stated when rendering its verdict regarding two counts of felonious assault that the state had not presented evidence that rose to the level of guilty beyond a reasonable doubt as to the felonious assault charges. *Id*. at ¶ 12. The court went on to find, however, that the state had presented evidence that rose to the legal standard of guilty beyond a reasonable doubt as to aggravated assault and, accordingly, the trial court found the defendant guilty of two counts of aggravated assault. *Id*. This court reversed the convictions on appeal, finding that the trial court at no point considered the mitigating factor of provocation and further, that the trial court had effectively found Martin not guilty of both felonious assault charges when it determined that the state had not satisfied its burden of proof with respect to those charges. *Id*.

{¶ 13} Wilson contends that this case is like *Martin* because the trial court's statement that it "rejects the allegations contained in Count 1" was "tantamount to

an acquittal," and therefore, because the trial court found him not guilty of felonious assault, it could not then find him guilty of the inferior degree offense of aggravated assault. (Appellant's Brief, p. 7).

**{¶ 14}** We disagree with Wilson's assertion that the court's statement that it rejected the allegations in Count 1 meant that it found him not guilty of felonious assault. Rather, when considered in light of the court's statement immediately prior that Wilson was guilty of domestic violence because he knowingly caused physical harm to Karima (tr. 135), and its statement immediately following that Wilson punched Karima only after she bit him (tr. 136), we find the court's statement that it rejected the allegations in Count 1 to be merely an imprecise way of saying that although Wilson knowingly caused serious physical harm to Karima (the elements of felonious assault), he was provoked into doing so. Accordingly, despite its inartful statement, we conclude that the trial court found Wilson guilty of felonious assault beyond a reasonable doubt but then found that he had proved the mitigating factor of provocation sufficient to find him guilty of the inferior offense of aggravated assault.[1] The first assignment of error is overruled.

### B. Allied Offenses

**{¶ 15}** In his second assignment of error, Wilson contends that the trial court erred in not merging his convictions for aggravated assault and domestic violence as allied offenses.

---

[1] Although the trial court stated that Wilson was guilty of "the inferior offense of agg[ravated] assault," the journal entries of conviction and sentencing incorrectly refer to aggravated assault as a "lesser-included offense" of felonious assault.

{¶ 16} The allied offenses statute, R.C. 2941.25, codifies Ohio's double jeopardy protections regarding when multiple punishments may be imposed. *State v. Ruff,* 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 12. Under the statute, where the same conduct by a defendant can be construed to constitute two or more allied offenses of similar import, the indictment may contain counts for all such offenses, but the defendant may be convicted of only one offense. A defendant charged with multiple offenses may be convicted of all the offenses, however, if (1) the defendant's conduct constitutes offenses of dissimilar import; i.e., each offense caused separate, identifiable harm; (2) the offenses were committed separately; or (3) the offenses were committed with separate animus or motivations. R.C. 2941.25(B); *Ruff* at ¶ 14. Thus, to determine whether offenses are allied, courts must consider the defendant's conduct, the animus, and the import. *Id*. at paragraph one of the syllabus.

{¶ 17} Where a defendant fails to raise the issue of allied offenses in the trial court, he forfeits all but plain error on appeal. *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 3. Applying the plain error standard to an allied offenses argument, the "accused has the burden to demonstrate a reasonable probability that the convictions are allied offenses of similar import committed with the same conduct and without a separate animus" or import. *Id.*

{¶ 18} Wilson concedes that he did not raise the issue of allied offenses in the trial court, and our review is therefore for plain error. He contends, and we agree, that his convictions were allied offenses because his offenses involved the

same victim, were committed with a single animus, and the injuries caused by each offense were the same. The state concedes the error. Accordingly, we sustain the second assignment of error and remand for resentencing to merge the offenses with the state electing the count upon which Wilson should be sentenced.

## C. Sufficiency of the Evidence

{¶ 19} In his third assignment of error, Wilson contends there was insufficient evidence to support his conviction for aggravated assault because the state failed to present evidence of "serious physical harm," an element of the offense.

{¶ 20} The test for sufficiency requires a determination of whether the prosecution met its burden of production at trial. *State v. Williams*, 8th Dist. Cuyahoga No. 98210, 2013-Ohio-573, ¶ 16. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 21} As relevant to this appeal, R.C. 2901.01(A)(5)(d) defines serious physical harm to persons as any physical harm that involves some temporary, serious disfigurement.

{¶ 22} This court has recognized that although serious physical harm is defined in the statute, "[t]he degree of harm that rises to the level of 'serious' physical harm is not an exact science" given that the definition includes such terms as "substantial," "temporary," "acute," and "prolonged." *State v. Miller*, 8th Dist.

Cuyahoga No. 98574, 2013-Ohio-1651, ¶ 18. Nevertheless, "this court has 'historically applie[d] a liberal interpretation of "serious physical harm" to persons.'" *State v. Henry*, 8th Dist. Cuyahoga No. 102634, 2016-Ohio-692, ¶ 41, quoting *State v. Davis*, 8th Dist. Cuyahoga No. 81170, 2002-Ohio-7068, ¶ 20.

{¶ 23} In support of his argument that Karima's injuries did not amount to serious physical harm, Wilson directs us to *State v. Enovitch*, 8th Dist. Cuyahoga No. 72827, 1998 Ohio App. LEXIS 3833 (Aug. 20, 1998), wherein this court found that the victim's injuries did not constitute serious physical harm because even though the cut over the victim's eye required 11 stitches, there was no evidence that the scar from the laceration was permanent and the hospital records characterized the injury as "minor." *Id*. at 6. Wilson contends that Karima's injuries were only superficial and less severe than those in *Enovitch* and accordingly, any finding of serious physical harm was not supported by sufficient evidence.

{¶ 24} As this court noted in *State v. Finley*, 8th Dist. Cuyahoga No. 108062, 2019-Ohio-3891, however, this court has distinguished *Enovitch* several times since it was decided. In *State v. Whittsette*, 8th Dist. Cuyahoga No. 85478, 2005-Ohio-4824, for example, this court upheld the defendant's conviction for felonious assault, even though the victim did not seek any medical attention, where the defendant struck the victim in the head with a gun, causing gashes on the victim's head. *Finley* at ¶ 26, citing *Whittsette* at ¶ 20. This court also distinguished *Enovitch* in *State v. Norman*, 8th Dist. Cuyahoga No. 85938, 2005-Ohio-6018, concluding that even if the victim's facial and neck lacerations did not leave a

permanent scar, they constituted serious physical harm because they were a temporary, serious disfigurement under R.C. 2901.01(A)(5)(d). In *Finley,* this court likewise declined to follow *Evonitc*h, concluding that because the state presented evidence of the victim's loss of blood and that she sought medical treatment and received butterfly stitches for the wounds on her neck and ear lobe, there was sufficient evidence of serious physical harm. *Id*. at ¶ 30.

{¶ 25} As in *Finley*, *Whittsette*, and *Norman*, we find *Enovitch* distinguishable from this case. As noted in *Finley*, "'[t]his court has consistently held that the need for stitches constitutes serious physical harm for purposes of a felonious assault conviction.'" *Finley* at ¶ 28, quoting *State v. Studgions*, 8th Dist. Cuyahoga No. 94153, 2010-Ohio-5480, ¶ 10, citing *State v. Churchwell*, 8th Dist. Cuyahoga No. 88171, 2007-Ohio-1600, ¶ 28. This court has also "'repeatedly held that the element of serious physical harm is satisfied when the evidence shows that the victim sustained injuries requiring medical treatment, including stitches.'" *Finley* at *id.*, quoting *State v. Williams*, 8th Dist. Cuyahoga No. 98210, 2013-Ohio-573, ¶ 19. Furthermore, this court has found serious physical harm even where no stitches were required but the victim sustained a bloody cut and significant swelling to the eye. *See State v. Payne*, 8th Dist. Cuyahoga No. 76539, 2000 Ohio App. LEXIS 3274, 9 (July 20, 2000) (even where no stitches were required, a bloody cut and swollen eye was sufficient to establish serious physical harm under R.C. 2901.01(A)(5) because the injury was a temporary, serious disfigurement).

{¶ 26} Accordingly, in light of the foregoing precedent and the facts of this case — the contusion on Karima's face, the abrasions to her forehead, her "fat and swollen" lips, the lacerations on her upper and lower lips, and her transport to the hospital by ambulance, where she underwent a CT scan to determine whether any bones in her jaw were broken and received three stitches to close the laceration on her upper lip — we find that the state presented sufficient evidence to establish that Karima sustained a serious physical injury that involved some temporary, serious disfigurement pursuant to R.C. 2901.01(A)(5)(d). After reviewing the evidence in a light most favorable to the prosecution, as we are required to do, we find that the state produced sufficient evidence to prove the element of serious physical harm beyond a reasonable doubt. The third assignment of error is overruled.

### D. Manifest Weight of the Evidence

{¶ 27} In his fourth assignment of error, Wilson contends that his convictions are against the manifest weight of the evidence because the evidence demonstrated that he acted in self-defense.

{¶ 28} In contrast to a sufficiency argument, a manifest weight challenge questions whether the state met its burden of persuasion. *State v. Armstrong*, 8th Dist. Cuyahoga No. 109709, 2021-Ohio-1087, ¶ 24. A reviewing court examines the entire record, "weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the convictions must be reversed and a new trial ordered."

*State v. Thompkins*, 78 Ohio St.3d 380, 388, 678 N.E.2d 541 (1997). A conviction should be reversed as against the manifest weight of the evidence only in the most "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶ 29} Wilson testified that he knew he was not allowed to be at Karima's home but went there anyway on June 7, 2021. He testified further that Karima owned the car that he was driving that day and that when Karima bit him as he was trying to pull her out of her car as she was trying to drive away, he punched her twice in the face.

{¶ 30} "Ohio courts have long recognized that a person may not provoke an assault or voluntarily enter an encounter and then claim the right of self-defense." *State v. Vines*, 8th Dist. Cuyahoga No. 33871, 1975 Ohio App. LEXIS 6280, *8 (May 29, 1975); *see also State v. Gaston*, 8th Dist. Cuyahoga No. 98904, 2013-Ohio-2331, ¶ 16, quoting *State v. Nichols*, 4th Dist. Scioto No. 01CA2775, 2002-Ohio-415 (same); *State v. Sekic*, 8th Dist. Cuyahoga No. 95633, 2011-Ohio-3987, ¶ 15 (defendant could not claim self-defense where he created the situation and failed to avoid the danger that led to the altercation). Because Wilson's own testimony demonstrates that he was at fault in creating the situation that gave rise to the altercation by going to Karima's house and then trying to prevent her from leaving the scene in the car she owned, he cannot claim self-defense.

{¶ 31} After reviewing the record, weighing the evidence, and considering the credibility of the witnesses, we find no indication that the trier of fact lost its way and created such a manifest miscarriage of justice that Wilson's convictions for

aggravated assault and domestic violence should be reversed and a new trial ordered. The fourth assignment of error is therefore overruled.

{¶ 32} Judgment affirmed; remanded for resentencing.

It is ordered that the parties share equally the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for resentencing and execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KATHLEEN ANN KEOUGH, JUDGE

ANITA LASTER MAYS, A.J., and
SEAN C. GALLAGHER, J., CONCUR