[Cite as *State v. Williams*, 2023-Ohio-1903.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,          :

                                       No. 111620

    v.                           :

KENNETH WILLIAMS,                       :

    Defendant-Appellant.         :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** June 8, 2023

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-20-650422-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Carl M. Felice, Assistant Prosecuting Attorney, *for appellee*.

Christopher M. Kelley, *for appellant*.

ON RECONSIDERATION[1]

MARY EILEEN KILBANE, J.:

{¶ 1} Defendant-appellant Kenneth Williams ("Williams") appeals from his conviction for aggravated assault, raising a single assignment of error for our review:

Appellant's conviction was against the manifest weight of the evidence.

After careful review of the record and relevant case law, we affirm.

**Factual and Procedural History**

{¶ 2} On August 13, 2020, a Cuyahoga County Grand Jury indicted Williams on one count of felonious assault in violation of R.C. 2903.11(A)(1). This charge was the result of an incident between Williams and the victim Cory Wilburn ("Wilburn"). Williams and Wilburn had been friends for over a decade. On April 26, 2020, Williams and Wilburn attended a barbecue. Both men drank at the barbecue and later that night, they went to a hotel party and continued drinking. The two drank excessively and Wilburn eventually drove back to Williams's apartment. In the early morning hours of April 27, 2020, Williams and Wilburn got into an argument because Wilburn wanted to drive home, and Williams did not want Wilburn to drive because he was so intoxicated. Williams threw a single punch, knocking Wilburn to the ground. Shortly thereafter, Wilburn stumbled backwards

---

[1] The original announcement of decision, *State v. Williams*, 8th Dist. Cuyahoga No. 111620, 2023-Ohio-1137, released April 6, 2023, is hereby vacated. This opinion, issued upon reconsideration, is the court's journalized decision in this appeal. *See* App.R. 22(C); *see also* S.Ct.Prac.R. 7.01.

through the parking lot, running into a small pole, losing his balance, and falling backwards, hitting his head on the pavement. Wilburn suffered multiple brain bleeds and a skull fracture and is currently living in a rehabilitation home as a result of these injuries.

{¶ 3} Williams initially pleaded not guilty to the charge. On April 5, 2022, Williams waived his right to a trial by jury, and the case proceeded to a bench trial.

{¶ 4} The state called Damen Strikwerda ("Strikwerda"), a resident of Harbor Crest apartments in Euclid, Ohio, where the incident took place, to testify. Strikwerda testified that he was in his apartment when he heard an argument in the parking lot that prompted him to go out on his balcony. From his balcony on the building's eighth floor, he observed two men — Williams and Wilburn — arguing in the parking lot. He also observed a van parked in the middle of the parking lot. According to Strikwerda, he could not make out the exact words exchanged, but the men appeared to be intoxicated and "seemed to be arguing about getting in the driver's seat or driving somewhere." After observing for a brief period of time, Strikwerda saw Williams punch Wilburn in the face, knocking him to the ground, where Wilburn appeared to be unconscious for a prolonged period of time. Upon seeing this, Strikwerda called 911.

{¶ 5} After the punch, Strikwerda observed Williams pick up Wilburn and carry him towards the apartment building. At some point, Strikwerda observed that Williams returned to the van and parked it in a proper parking spot and went inside

the apartment building for a short time before coming back outside to the parking lot.

{¶ 6} When asked which of the men was the "primary aggressor" in the situation, Strikwerda testified that both men seemed fairly verbally aggressive, but Williams "was definitely the more physically aggressive one." Strikwerda's testimony was subsequently corroborated by surveillance footage of the parking lot.

{¶ 7} The state also called two 911 dispatchers to testify. Ginger Hatfield ("Hatfield") testified that she received a 911 call on April 27, 2020 from Strikwerda. Hatfield remained on the phone with Strikwerda as the police arrived at the scene. Essence Sullins ("Sullins") testified that she received a 911 call from another neighbor on April 27, 2020.

{¶ 8} Euclid police officer Alexander Schwedt ("Schwedt") testified that he received a dispatch around 4:30 a.m. on April 27, 2020, to respond to an argument outside Harbor Crest apartments. When Schwedt arrived on the scene, he observed Williams and Wilburn next to a car near the entrance to the apartment building. As Schwedt pulled up to the men, Williams noticed the approaching police and immediately ran inside the apartment building. Wilburn remained in the parking lot, leaning up against a vehicle.

{¶ 9} Schwedt testified that he approached Wilburn and saw that the left side of his face was swollen and he was bleeding profusely from the mouth and appeared very intoxicated. Wilburn was slurring his words and was unable to explain to Schwedt what had happened. Schwedt called for EMS. While waiting for

EMS, Schwedt, fearing Wilburn would fall, helped him to the ground. Upon sitting down, Wilburn went in and out of consciousness and continued to bleed from the mouth.

{¶ 10} Schwedt testified that after EMS took Wilburn to the hospital, he remained on the scene and spoke with several other eyewitnesses who echoed Strikwerda's version of the altercation between Wilburn and Williams. Specifically, Schwedt testified that these eyewitnesses said that "[Wilburn] got aggressive and then they had stated that [Williams] punched him in the face and then picked him up and was dragging him to the door." As to the substance of the argument between Williams and Wilburn, Schwedt referred to his report, which stated that Wilburn was screaming at Williams that he wanted to go home, and the eyewitnesses saw Williams as a friend trying to get him to stop.

{¶ 11} Marshaun Kahn-Assian ("Kahn-Assian"), a Euclid paramedic and firefighter, testified that he arrived at Harbor Crest apartments following reports of an assault. Kahn-Assian observed that Wilburn appeared intoxicated and was confused. He testified that Wilburn did not initially present as having severe head trauma, and as such, he was transported to Euclid Hospital. Kahn-Assian testified that he subsequently learned that Wilburn's condition had deteriorated, and he was transferred to Hillcrest as a result of his serious condition.

{¶ 12} Euclid police officer Christopher Frato ("Frato") testified that on April 27, 2020, he responded to Hillcrest Hospital, where Wilburn was being treated for various injuries in the intensive care unit. When Frato arrived at the hospital, a

nurse informed him that Wilburn was awake and responding to questions. Frato testified that upon entering Wilburn's room, Wilburn's eyes were closed and he was unresponsive to Frato's questions. Frato went on to testify that later that day, a nurse contacted him to inform him that Wilburn's condition had worsened, and it appeared that he might pass away that day.

{¶ 13} Frato subsequently made phone contact with Wilburn's brother, Anthony Wilburn ("Anthony"). Anthony told Frato that he was on the other line with Williams, who seemed nervous and appeared to be lying to Anthony, which Anthony believed was odd behavior for Williams. Frato then engaged in a three-way phone conversation with Anthony and Williams. Williams explained that he and Wilburn had been drinking together the previous day, they had an argument in the Harbor Crest parking lot, and upon seeing police arrive, Williams became scared and went inside the building. Frato testified that he told Williams about Wilburn's injuries; Williams responded that the injuries were not from him and he was unsure how Wilburn sustained those injuries.

{¶ 14} Brittany Bauer ("Bauer"), a physician assistant in the emergency department at Euclid Hospital, testified that she treated Wilburn on April 27, 2020. Bauer testified that Wilburn was unable to state his name or social security number, which represented a decline in his mental state from the time that he was treated on the scene to the time that he arrived at the hospital. Bauer testified that Wilburn's blood alcohol content was 0.30. Bauer testified that a CAT scan revealed that Wilburn had an acute subdural hematoma on the left side of his skull and an acute

subarachnoid hemorrhage — two specific kinds of bleeding in the brain. Additionally, Wilburn had a fracture on the right side of his skull near his ear. Finally, Bauer testified that Wilburn had a small cut on his lower left lip.

{¶ 15} Wilburn's brother Anthony testified that he received a call from his mother at around 8:30 a.m. on April 27, 2020, and that she was hysterical and worried about Wilburn's whereabouts. Anthony testified that his mother told him that Wilburn had left home on April 26 to go out with Williams and had not been seen since. Anthony then called Wilburn's fiancée, Synquist Reid ("Reid"), who also said that Wilburn and Williams had gone out the previous night. Anthony then obtained Williams's number and called him. Anthony asked Williams if he knew where Wilburn was, and Williams responded that he did not. Anthony then asked Williams if they had gone out together the previous night, and Anthony described Williams as being evasive. Anthony then called his mother and Reid, who had by then determined that Wilburn's vehicle was parked outside of Williams's apartment. Upon learning this, about an hour after his first phone call to Williams, Anthony called Williams back.

{¶ 16} Anthony testified that Williams admitted that he and Wilburn had gone out the previous night and had gotten into a physical altercation. Williams said that he had tried to get Wilburn into his apartment after this altercation, but Wilburn was not cooperating with him. Anthony testified that Williams said that when the police arrived to the scene, Williams went into the building because he had

an outstanding arrest warrant. At some point in this conversation, Anthony was contacted by Frato and initiated a three-way phone call with Williams and Frato.

{¶ 17} Anthony testified that at the time of trial, Wilburn was in a rehabilitation home. Anthony explained that about a year after the incident, Wilburn was able to talk, but his memory is still very vague. Anthony testified that Wilburn's limbs are folded up, he speaks with a slur, and is unable to do anything for himself.

{¶ 18} Reid testified that she met Wilburn in late 2017, and in April 2020, she was Wilburn's fiancée. Reid testified that on April 26, 2020, she was having a cookout at her house around 5 p.m. with her children, Wilburn, Williams, and another friend. According to Reid, Wilburn and Williams left her house around 10 p.m. in Wilburn's van. Reid testified that Wilburn did not come home that night, which was unusual, and she tried to call him and figure out where he was. Reid testified that she finally spoke to Wilburn around 1 a.m.; she testified that he sounded normal and said he was on his way to drop off Williams and then come home.

{¶ 19} Reid testified that she woke up around 6 a.m. on April 27 and panicked when she realized Wilburn had not come home. She called Williams repeatedly until he answered and said that Wilburn was not there. Reid said that Williams told her several different stories as to where Wilburn might be. At one point, Williams told Reid that Wilburn was mad because Williams knocked him out with one punch.

**{¶ 20}** Finally, Euclid police detective Phil Tschetter ("Tschetter") testified that he was assigned to this case on April 27, 2020. Tschetter testified that he obtained surveillance footage from Harbor Crest showing the parking lot and an interior hallway. Tschetter also testified that as part of his investigation, he spoke with Anthony and Reid and interviewed Williams. Tschetter described Williams as being hostile and uncooperative during his interview, but that Williams's version of events largely aligned with the foregoing evidence presented at trial.

**{¶ 21}** Trial concluded on April 6, 2022.

**{¶ 22}** On April 13, 2022, the court found Williams guilty of aggravated assault in violation of R.C. 2903.12(A)(1), an inferior offense to felonious assault. In announcing its verdict, the court stated:

> Now, given the totality of the circumstances, the Court is not willing to convict the defendant of felonious assault. There is intoxication. There was an ongoing argument.

> Moving on to the issue of aggravated assault. Considering the testimony that both were acting aggressively towards each other, both were probably inebriated, we know for sure the victim was, it seems appropriate to find guilt, beyond a reasonable doubt, of aggravated assault.

The court referred Williams for a presentence investigation and report.

**{¶ 23}** On May 16, 2022, the court held a sentencing hearing. The court sentenced Williams to six months in prison.

**{¶ 24}** Williams appeals, presenting a single assignment of error for our review:

> The appellant's conviction is against the manifest weight of the evidence.

**Legal Analysis**

{¶ 25} A manifest weight challenge questions whether the state met its burden of persuasion. *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 13. "'[W]eight of the evidence involves the inclination of the greater amount of credible evidence.'" *State v. Harris*, 8th Dist. Cuyahoga No. 109060, 2021-Ohio-856, ¶ 32, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). On a manifest weight challenge, "a reviewing court asks whose evidence is more persuasive — the state's or the defendant's?" *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25. A reviewing court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin*, 20 Ohio App.3d 172, 485 N.E.2d 717 (1st Dist.1983), paragraph three of the syllabus. Reversal of a trial court's "judgment on manifest weight of the evidence requires the unanimous concurrence of all three appellate judges." *State v. Crumbley*, 8th Dist. Cuyahoga No. 93202, 2010-Ohio-3866, ¶ 20, citing *Thompkins* at paragraph four of the syllabus.

{¶ 26} Williams was charged with felonious assault in violation of R.C. 2903.11(A)(1), which provides that "no person shall knowingly cause serious physical harm to another." The offenses of aggravated assault and felonious assault are comprised of the same elements, except aggravated assault contains the mitigating element of "serious provocation." *State v. Wilson*, 8th Dist. Cuyahoga

No. 111543, 2023-Ohio-218, ¶ 10. Accordingly, aggravated assault is an inferior offense of felonious assault. *Id.*, citing *State v. Williams*, 8th Dist. Cuyahoga No. 98210, 2013-Ohio-573, ¶ 21. Here, the court cited both men's intoxication and the ongoing argument in finding Williams guilty of aggravated assault.

{¶ 27} Williams asserts that his conviction was against the manifest weight of the evidence because the state failed to show, beyond a reasonable doubt, that Williams was not acting in self-defense. Williams argues that his use of force against Wilburn was reasonable under the circumstances of the incident because he punched Wilburn only once and only to protect himself from Wilburn.

{¶ 28} It is undisputed that Williams threw a single punch. "This court has repeatedly held that a single punch, even if it causes serious physical harm or death, is nondeadly force." *State v. Davidson-Dixon*, 2021-Ohio-1485, 170 N.E.3d 557, ¶ 32 (8th Dist.), citing *State v. Jacinto*, 2020-Ohio-3722, 155 N.E.3d 1056, ¶ 43, fn. 2 (8th Dist.), citing *State v. Triplett*, 192 Ohio App.3d 600, 2011-Ohio-816, 949 N.E.2d 1058, ¶ 14.

{¶ 29} Under Ohio law, a person is permitted to act in self-defense. R.C. 2901.05(B)(1). In cases involving the use of nondeadly force, the affirmative defense of self-defense applies where:

> (1) the defendant was not at fault in creating the situation giving rise to the affray in which the use of force occurred, (2) the defendant had reasonable grounds to believe and an honest belief, even if mistaken, that he or she was in imminent danger of bodily harm and (3) the only means to protect himself or herself from such danger was the use of force not likely to cause death or great bodily harm, i.e., the defendant

did not use more force than was reasonably necessary to defend against the imminent danger of bodily harm.

*Jacinto* at ¶ 43.

**{¶ 30}** Pursuant to R.C. 2901.05(B)(1), if evidence is presented at trial "that tends to support that the accused person used the force in self-defense" then "the prosecution must prove beyond a reasonable doubt that the accused person did not use the force in self-defense." In other words, if the accused satisfies the burden of presenting evidence that tends to support that they acted in self-defense, the burden shifts to the state to disprove at least one of the elements above. *Jacinto* at ¶ 46. The state's burden of persuasion is subject to a manifest weight review on appeal. *State v. Smith*, 8th Dist. Cuyahoga No. 111593, 2023-Ohio-1296, ¶ 52, citing *State v. Messenger*, Slip Opinion No. 2022-Ohio-4562, ¶ 27.

**{¶ 31}** Here, evidence was presented that tended to support that Williams acted in self-defense in the form of Williams's own statements — to the police, Anthony, and Reid. Thus, the state of Ohio was required to prove, beyond a reasonable doubt, that Williams was not acting in self-defense. This is accomplished by negating any one of the three elements of a self-defense claim. *Smith* at ¶ 52, citing *State v. Barker*, 8th Dist. Cuyahoga No. 111597, 2023-Ohio-453, citing *State v. Claytor*, 8th Dist. Cuyahoga No. 110837, 2022-Ohio-1938, ¶ 81, citing *State v. Travis*, 8th Dist. Cuyahoga No. 110514, 2022-Ohio-1233.

**{¶ 32}** We are mindful of the unique circumstances in this case, in which Williams knocked his friend out and caused significant damage with a single punch

in an attempt to prevent him from driving while intoxicated. However, the state was able to prove that Williams was not acting in self-defense.

{¶ 33} "'This court will not overturn the trial court's verdict on a manifest weight of the evidence challenge only because the trier of fact chose to believe certain witness testimony over the testimony of others.'" *State v. Pittman*, 9th Dist. Summit No. 29705, 2021-Ohio-1051, ¶ 16, quoting *State v. Hill*, 9th Dist. Summit No. 126519, 2013-Ohio-4022, ¶ 15. This specifically includes instances in which the trier of fact rejects a defendant's self-defense claim that rests entirely on the defendant's own self-serving statements. *Id.*, citing *State v. Johnson*, 9th Dist. Lorain No. 13CA010496, 2015-Ohio-1689, ¶ 15.

{¶ 34} Our review of the record shows that the state negated the first element of Williams's self-defense claim. With respect to the first element, whether Williams was at fault in creating the situation giving rise to the affray, Williams asserts that the evidence shows he was trying his best to prevent Wilburn from driving home while intoxicated. While the evidence presented at trial does generally support these circumstances, the fact that Williams did not want his friend to drive while intoxicated does not necessitate a conclusion that Williams was not at fault in creating the situation giving rise to the affray. While the record reflects that Wilburn got verbally "aggressive" with Williams, there is no evidence in the record, beyond Williams's own self-serving statements, that Wilburn was in any way physical before Williams punched him. To the contrary, the record contains evidence in the form of eyewitness testimony from Strikwerda that Williams was the primary aggressor.

{¶ 35} Because the state established, beyond a reasonable doubt, that Williams was not acting in self-defense, we cannot say that the evidence weighs heavily against a conviction or that the trial court lost its way. Williams's conviction was not against the manifest weight of the evidence. Therefore, his sole assignment of error is overruled.

{¶ 36} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY EILEEN KILBANE, JUDGE

ANITA LASTER MAYS, A.J., and
FRANK DANIEL CELEBREZZE, III, J., CONCUR