[Cite as *State v. Nolan*, 2023-Ohio-92.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
GREENE COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2022-CA-29 |
| | : | |
| v. | : | Trial Court Case No. 2021-CR-0258 |
| | : | |
| ROBERT L. NOLAN | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 13th day of January, 2022.

. . . . . . . . . . .

ANDREW J. HUNT, Atty. Reg. No. 0073698 and MEGAN A. HAMMOND, Atty. Reg. No. 0097714, Assistant Prosecuting Attorneys, Greene County Prosecutor's Office, 61 Greene Street, Suite 200, Xenia, Ohio 45385
      Attorneys for Plaintiff-Appellee

MICHAEL R. PENTECOST, Atty. Reg. No. 0036803, 117 South Main Street, Suite 400, Dayton, Ohio 45422
      Attorney for Defendant-Appellant

. . . . . . . . . . . . .

TUCKER, P.J.

    **{¶ 1}** Defendant-appellant Robert L. Nolan appeals from his convictions for

trafficking and possession of drugs.   He also challenges an order of forfeiture issued by the trial court.   For the following reasons, we affirm.

## I.        Facts and Procedural Background

{¶ 2} In 2021, a man who identified himself as "Bill" randomly approached a woman at a gas station and offered to sell her drugs.   Bill was later identified as Nolan. When the woman refused to purchase the drugs, Nolan gave her his phone number.   The woman reported the incident to the police and agreed to work as a confidential informant ("CI") for the police.   The CI worked with Detective Jacob Osburn to arrange drug purchases from Bill over a period of days in April 2021.

{¶ 3} On April 15, 2021, the CI texted Nolan asking for Percocet.   Nolan responded by text indicating he had Percocet for sale.   Nolan and the CI later spoke over the phone, and Nolan told her that the price was $17 per Percocet tablet and that he was "sending the girls" to meet the CI for the transaction.   The CI met two women in a parking lot and paid cash in exchange for 10 pills.[1]   The CI then met with Osburn and gave him the pills, which were subsequently determined to be fentanyl.

{¶ 4} The following day, the CI contacted Nolan seeking to purchase cocaine. Nolan responded that he would sell her cocaine for $100 per gram.   The two met in a parking lot, and the CI got into the back seat of a car with Nolan.   Peacock and Cohen were in the front seat of the car.   During the transaction, the CI was wearing a camera which recorded Nolan stating that selling Percocet and cocaine was his "forte."   After the

---

[1] The women were later identified as Teauna Cohen and Sarah Peacock.

transaction concluded, it was determined that Nolan had sold the CI .84 grams of cocaine.

{¶ 5} On April 22, 2021, the CI texted Nolan seeking to buy a gram of cocaine. Nolan again offered to sell her cocaine for $100. The exchange took place at an apartment and was recorded by a camera worn by the CI. Nolan sold the CI .97 grams of cocaine on that occasion.

{¶ 6} On April 23, the CI met Nolan at the same apartment and purchased 6.91 grams of cocaine. The transaction was recorded on the CI's camera. On April 29, Nolan and the CI met in the parking lot of the same apartment, and the encounter was filmed by the police. At that time, Nolan sold the CI 5.7 grams of cocaine. Finally, on April 30, 2021, the CI went to the same apartment and then entered a vehicle occupied by Nolan and Peacock. The CI was wearing a camera which recorded Nolan providing her with what was later determined to be 5.4 grams of cocaine.

{¶ 7} The police obtained a search warrant for the apartment, which they executed on May 4, 2021. As the police entered the apartment, Nolan attempted to escape out the back door. Peacock and Cohen were also in the apartment. The police seized 3.8 grams of cocaine, 45 grams of fentanyl, 3.48 grams of amphetamines, cash, and digital scales. The police also seized a cellphone, which was linked to the drug transactions between Nolan and the CI. Peacock and Cohen identified Nolan as the source of the drugs located in the apartment.

{¶ 8} Nolan was indicted on one count of aggravated trafficking in drugs, seven counts of trafficking in drugs, seven counts of possession of drugs, and two counts of aggravated possession of drugs. The indictment also contained four forfeiture

specifications. Nolan was tried by a jury on January 31, 2022, and the jury found Nolan guilty on all of the counts in the indictment. The trial court sentenced Nolan to an aggregate minimum prison term of 15.5 years with a maximum term of 16.5 years. The court subsequently held a hearing on the second forfeiture specification set forth in the indictment.[2] Following the hearing, the trial court ordered forfeiture of $3,378.98 in a KeyBank account owned by Nolan.

{¶ 9} Nolan appeals.

## II.    Manifest Weight of the Evidence

{¶ 10} Nolan's first assignment of error states:

THE JUDGMENT OF THE TRIAL COURT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 11} Nolan claims his convictions were against the manifest weight of the evidence because the State's witnesses were not credible. Specifically, he argues that the facts that the CI was paid for her participation in the drug sales and that Cohen and Peacock were accomplices to the drug transactions rendered their testimonies suspect.

{¶ 12} When a conviction is challenged on appeal as being against the weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial

_____

[2] The parties entered into agreed stipulations regarding the other three forfeiture specifications.

ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). A judgment should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 13} Importantly, "[b]ecause the factfinder * * * has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684, *4 (Aug. 22, 1997). The jury, as the fact-finder, "is free to believe all, some, or none of the testimony of each witness appearing before it." *State v. Ellis*, 8th Dist. Cuyahoga No. 98538, 2013-Ohio-1184, ¶ 18. This court will not substitute its judgment for that of the trier of fact on the issue of witness credibility unless it is patently apparent that the trier of fact lost its way in arriving at its verdict. *State v. Bradley*, 2d Dist. Champaign No. 1997-CA-03, 1997 WL 691510, *4 (Oct. 24, 1997).

{¶ 14} We have reviewed the testimony of the CI, Cohen, and Peacock, the basic facts of which are set forth above. Despite Nolan's claims to the contrary, we find nothing inherently incredible about that testimony. We note that the jury was made aware of the fact that the CI had received approximately $400 as remuneration for aiding the police investigation during the drug transactions but was not compensated for testifying at trial.

Further, the jury was informed that Cohen and Peacock had no plea agreement in place at the time of their testimonies and that the State "[might] offer a favorable resolution" to their cases in exchange for their truthful testimony. The jury was free to determine what credit to accord these witnesses, and we cannot say it clearly lost its way in accepting their testimony.

{¶ 15} The first assignment of error is overruled.

### III.     Forfeiture Specification

{¶ 16} Nolan's second assignment of error states:

THE TRIAL COURT ERRED BY GRANTING FORFEITURE OF KEYBANK

ACCOUNT PURSUANT TO SPECIFICATION NO. 2.

{¶ 17} Nolan contends that the trial court erred in ordering forfeiture of his bank account because the State did not present clear and convincing evidence demonstrating that the account was subject to forfeiture.

{¶ 18} R.C. 2981.04(B), which governs forfeiture specifications, states, in relevant part:

If a person * * * is convicted of * * * an offense * * * and the complaint, indictment, or information charging the offense * * * contains a specification covering property subject to forfeiture under section 2981.02 of the Revised Code, the trier of fact shall determine whether the person's property shall be forfeited. If the state * * * proves by clear and convincing evidence that the property is in whole or part subject to forfeiture under section 2981.02

of the Revised Code, after a proportionality review under section 2981.09 of the Revised Code when relevant, the trier of fact shall return a verdict of forfeiture that specifically describes the extent of the property subject to forfeiture. * * *

{¶ 19} "Proceeds derived from or acquired through the commission of an offense" are subject to forfeiture. R.C. 2981.02(A)(1). A proportionality determination is not required for proceeds obtained from the offense. R.C. 2981.09(B).

{¶ 20} As stated above, the parties entered agreed stipulations regarding three of the four indicted forfeiture specifications. The court held a hearing on the second forfeiture specification, which alleged that monies, specifically $3,378.98 held in Nolan's Key Bank account, were proceeds of the underlying offenses.

{¶ 21} The trial court was familiar with the facts of the underlying case after presiding over Nolan's criminal trial. At the forfeiture hearing, the State presented evidence that Nolan did not have a job or other legitimate source of income for the period from January 2021 through May 2021. The State also presented evidence that, during this same time, Peacock facilitated Nolan's drug sales by driving him to locations where he conducted drug transactions, and Nolan sold significant quantities of fentanyl and cocaine. Finally, the State presented evidence that, during this time, Nolan made deposits totaling approximately $17,000 into a KeyBank account using "Cash App." Detective Osburn testified that Cash App is very commonly used by drug traffickers to deal with the proceeds of their drug transactions. The evidence also demonstrated that none of the deposits were made from a paycheck, IRS stimulus or refund deposit, or other

legitimate source.

**{¶ 22}** "Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 477, 120 N.E.2d 118 (1954). Having reviewed the record, we conclude that the State met the clear and convincing standard regarding the source of the KeyBank funds. There was competent, credible evidence demonstrating that the deposits made into the KeyBank account constituted proceeds from drug transactions. Thus, we conclude the trial court did not err in its forfeiture determination.

**{¶ 23}** Accordingly, the second assignment of error is overruled.

## IV.    Conclusion

**{¶ 24}** Both of Nolan's assignments of error being overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

WELBAUM, J. and EPLEY, J., concur.

Copies sent to:

Andrew J. Hunt
Megan A. Hammond
Michael R. Pentecost
Hon. Adolfo A. Tornichio