[Cite as *State v. Rhoades*, 2025-Ohio-2358.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
DARKE COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | C.A. No. 2024-CA-19 |
| Appellee | : | |
| | : | Trial Court Case No. 24-CRB-001-0388 |
| v. | : | |
| | : | (Criminal Appeal from Municipal Court) |
| LUCAS J. RHOADES | : | |
| | : | **FINAL JUDGMENT ENTRY &** |
| Appellant | : | **OPINION** |
| | : | |

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on July 3, 2025, the judgment of the trial court is affirmed.

Costs to be paid as stated in App.R. 24.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately serve notice of this judgment upon all parties and make a note in the docket of the service. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.

Tucker, J; Lewis, J.; and Huffman, J. concur.


For the court,


[[Applied Signature]]

MICHAEL L. TUCKER, JUDGE

**OPINION**
DARKE C.A. No. 2024-CA-19

STEVEN H. ECKSTEIN, Attorney for Appellant
MATTHEW J. PIERRON, Attorney for Appellee

TUCKER, J.

{¶ 1} Defendant-appellant Lucas J. Rhoades appeals from his conviction, following a bench trial, for misdemeanor assault. Rhoades asserts his conviction was against the manifest weight of the evidence because the State failed to disprove his claim that he acted in defense of another. Rhoades has failed to demonstrate that the trial court lost its way in rejecting his claim that he acted in defense of another. Accordingly, we affirm.

## I.      Factual and Procedural Background

{¶ 2} This case arose from a physical altercation that occurred between the victim and various family members and family friends of the victim's neighbor, Larry Rue, including Rhoades. Following an investigation, Rhoades was charged by complaint with one count of assault in violation of R.C. 2903.13(A). Rhoades filed a notice of his intent to argue that he had acted in "self-defense, defense of another, or defense of one's residence."

{¶ 3} A bench trial was conducted on December 18, 2024. The victim testified that, on September 14, 2024, he looked out the window of his home and noticed that a fencing stake had been removed from his yard. The victim retrieved a sledgehammer, walked to the home of his neighbor, Larry Rue, and knocked on the front door. When Rue opened

the door, the victim asked him why the stake had been removed. According to the victim, Rue indicated that his stepson, Dane Miller, had removed the stake. Both men then walked to the area on the victim's property where the stake had been, and the victim hammered the stake back into the ground. The victim testified that Rue then asked him to come back to his (Rue's) property to discuss the matter, and the two men stood on Rue's driveway discussing the removal of the stake. According to the victim, neither he nor Rue raised his voice during the conversation. Further, the victim testified that he was holding the sledgehammer at his side.

{¶ 4} The victim testified that he and Rue were talking when Miller approached the victim from behind. Miller walked around the victim and threw a punch, which the victim was able to deflect. Miller then punched the victim with his other hand. The victim testified that he was attempting to return to his own yard when Rhoades and several other men approached him. Rhoades then assaulted the victim, who fell to the ground. Rhoades, Miller, and several other men hit and kicked the victim. The victim testified that Rhoades had punched him and kicked him. Eventually, the victim escaped to his garage, and his wife called 911.

{¶ 5} Versailles police officer Nathan Nolte responded to the scene. After speaking with the victim, Nolte went to Rue's property and observed seven or eight men standing in the driveway area. Nolte spoke to the group and was told that the victim had been yelling at Rue and "waving" the sledgehammer in the air. The group also told Nolte that the victim had been asked to leave the premises and, when he failed to comply, Miller and Rhoades intervened to protect Rue. Nolte provided witness statement forms to the individuals, but no one filed a statement. Nolte photographed the victim's injuries. The photographs depicted scratch marks on the back of the victim's neck, abrasions to his elbow, an

abrasion/cut to his knee, a bloody hand, and a ripped-out fingernail.

{¶ 6} Rue testified that he and the victim had had an ongoing dispute over their respective property lines.   On the day of the assault, Rue responded to a knock on his front door and encountered the victim, who was upset and carrying a hammer.   Rue accompanied the victim to his property and watched him hammer a stake back into the ground.   Rue testified that he wanted to calm the victim, so he asked him to return to Rue's property to sit and talk, but the victim refused to sit down.   According to Rue, the victim stated that he was "fucking pissed" and began bunching his fists.   At that point, Miller approached the two men, placed a hand on the victim's shoulder, and told the victim to leave Rue's property.   Miller and the victim then began fighting, at which point Rhoades intervened to stop the fight.   Rue stated that Rhoades "turned" the victim, who then fell. Rue testified that Rhoades did "strike" the victim, but he was merely trying to protect Miller.

{¶ 7} Rhoades testified that he arrived at Rue's home and observed the victim yelling at Rue while brandishing a hammer.   According to Rhoades, Miller put his hand on the victim's shoulder and told him to leave.   The victim then swung his hammer and hit Miller on the arm[1]; Rhoades then grabbed the victim by the neck and "threw him" toward his own property.   The victim fell and struck his hand on concrete.   Rhoades stated that he did not think he had hit the victim, "But, I mean, I could have whenever I tried to grab him.   I could see maybe why he would have thought I would, I did."   Tr. 80.   Rhoades testified that he had not intended to harm the victim and was merely "trying to deescalate the situation and make sure [Rue] wasn't hurt."   Tr. 80.

{¶ 8} The court found Rhoades guilty of assault and sentenced him to a jail term of

---

[1] On cross-examination, Rhoades testified that Miller did not react to the hammer blow and did not appear to be hurt.

90 days, of which 85 were suspended. Rhoades filed a motion to stay the sentence pending appeal, which the trial court denied. Rhoades appeals.

## II. Manifest Weight

{¶ 9} Rhoades's sole assignment of error states:

THE GUILTY VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AS THE DEFENDANT-APPELLANT'S PROOF OF DEFENSE OF OTHERS WAS NOT OVERCOME BY THE STATE BEYOND A REASONABLE DOUBT.

{¶ 10} Rhoades contends the evidence demonstrated that he acted in defense of another and, given this, his conviction was against the manifest weight of the evidence. Rhoades correctly points out that a manifest weight of the evidence standard of review applies to an argument that the State did not prove beyond a reasonable doubt that a defendant did not act in self-defense or, as here, defense of another. *See State v. Messenger*, 2022-Ohio-4562, ¶ 26.

{¶ 11} When a conviction is challenged on appeal as being against the weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). A judgment should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983).

{¶ 12} Although a manifest weight of the evidence review does require an appellate court to evaluate credibility, the determination of witness credibility is primarily for the trier of fact to decide. *State v. Baker*, 2020-Ohio-2882, ¶ 30 (12th Dist.), citing *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. "Because the factfinder . . . has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." *State v. Lawson*, 1997 WL 476684, *4 (2d Dist. Aug. 22, 1997).

{¶ 13} Rhoades was convicted of assault in violation of R.C. 2903.13(A), which states that "[n]o person shall knowingly cause or attempt to cause physical harm to another or to another's unborn." "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). "Physical harm" is defined as "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3). A victim's testimony is sufficient to sustain a conviction for assault in violation of R.C. 2903.13(A) if that testimony establishes all the elements of the offense. *Columbus v. McDaniel*, 2010-Ohio-3744, ¶ 18 (10th Dist.).

{¶ 14} Under appropriate circumstances, one may use necessary force to defend another against an assault. A defendant who asserts defense of another "stands in the shoes of the person he aids. . . ." *State v. Kleekamp*, 2010-Ohio-1906, ¶ 51 (2d Dist.), quoting *State v. Wilson*, 2009-Ohio-525, ¶ 38 (2d Dist.). As such, "[o]ne who acts in defense of another must meet the criteria for self-defense." *Id.*, quoting *Wilson* at ¶ 38.

{¶ 15} Self-defense involving the use of non-deadly force requires evidence that: (1) the defendant was not at fault in creating the situation giving rise to the altercation; (2) the defendant had reasonable grounds to believe and an honest belief, even if mistaken, that the defendant was in imminent danger of bodily harm; and (3) the only means of protecting himself or herself from that danger was by the use of force not likely to cause death or great bodily harm. *State v. Coleman*, 2018-Ohio-1951, ¶ 13 (2d Dist.). The State has the burden to prove, beyond a reasonable doubt, that a defendant did not act in defense of another. *State v. Gloff*, 2020-Ohio-3143, ¶ 3 (12th Dist.).

{¶ 16} Self-defense claims generally involve an evaluation of witness credibility. *State v. Campbell*, 2024-Ohio-1693, ¶ 32 (8th Dist.). The trial court, as the finder of fact, is free to believe all, part, or none of the testimony of each witness appearing before it." *State v. Nolan*, 2023-Ohio-92, ¶ 13 (2d Dist.). Although Rue and Rhoades testified that the victim had been at fault, the trial court was free to reject this testimony and to instead believe the victim's version of the events. *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. As stated above, the victim testified that he had not been yelling, brandishing the hammer, or acting in a threatening manner when he spoke to Rue; he was merely standing and speaking with Rue when he was attacked by Miller. He further testified that he had been trying to escape when Rhoades subsequently attacked him. On this record, the trial court could have reasonably concluded that Rhoades did not have reasonable grounds to believe that his conduct was necessary to protect Rue or Miller. "This Court will not overturn the trial court's verdict on a manifest weight of the evidence challenge only because the trier of fact chose to believe certain witness testimony over the testimony of others." (Citations omitted.) *State v. Williams*, 2023-Ohio-1903, ¶ 32 (8th Dist.).

**{¶ 17}** We cannot conclude that the trial court's rejection of Rhoades's defense of another claim was against the manifest weight of the evidence. Accordingly, the assignment of error is overruled.

### III.     Conclusion

**{¶ 18}** Rhoades' sole assignment of error being overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

LEWIS, J. and HUFFMAN, J., concur.