[Cite as *State v. Ward*, 2026-Ohio-1074.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | C.A. No. 30526 |
| Appellee | : | |
| | : | Trial Court Case No. 24CRB3640 |
| v. | : | |
| | : | (Criminal Appeal from Municipal Court) |
| LANCE WARD | : | |
| | : | **FINAL JUDGMENT ENTRY &** |
| Appellant | : | **OPINION** |
| | : | |

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on March 27, 2026, the judgment of the trial court is affirmed.

Costs to be paid as stated in App.R. 24.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately serve notice of this judgment upon all parties and make a note in the docket of the service. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.

For the court,

CHRISTOPHER B. EPLEY, JUDGE

LEWIS, P.J., and HUFFMAN, J., concur.

OPINION

ROBERT ALAN BRENNER, Attorney for Appellant
ASHLEY THOMAS, Attorney for Appellee

EPLEY, J.

**{¶ 1}** Lance Ward appeals his conviction for assault, following a jury trial in the Dayton Municipal Court. Ward asserts that his conviction is against the manifest weight of the evidence because he acted in self-defense. For the following reasons, the trial court's judgment is affirmed.

## I. Facts and Procedural History

**{¶ 2}** According to the State's evidence at trial, on November 9, 2024, Ward was staying with his girlfriend, Lydia, in a room she was renting from Parris Hawkins in Hawkins's home. Hawkins testified during the jury trial that he had not been receiving his mail regularly, so he contacted the United States Post Office and learned that a hold had been placed on all mail to his address. Hawkins also learned that Lydia had requested the hold, so he asked Ward and Lydia to come to the kitchen to discuss the issue. Hawkins testified that he was sitting in a kitchen chair and Ward was standing up, leaning against the sink. Hawkins told Ward that he knew they were the ones who stopped the mail and asked him why he could not be honest about it. Ward got angry and started to approach Hawkins who was still seated. Hawkins stood up and tried to push Ward away. Ward then began to punch Hawkins repeatedly. Ward eventually stopped hitting Hawkins and left the house, leaving Hawkins bleeding and injured in the kitchen.

**{¶ 3}** After Ward left the home, another tenant called the police. When officers arrived at the home, they observed injuries that Hawkins had sustained to his eye and arm, as well

as drops of blood on the floor in the kitchen. They spoke to Hawkins about the incident and attempted to speak to Lydia as well. However, she declined to answer any of the officers' questions. The officers also attempted to locate Ward so they could get his account of the incident, but they were unable to find him that night.

{¶ 4} Ward was charged with one count of assault, a first-degree misdemeanor. During the jury trial, Ward testified that he acted in self-defense when he hit Hawkins. On May 8, 2025, the jury found Ward guilty of assault. The trial court immediately sentenced him to 180 days in jail and two years of non-reporting community control. It also ordered Ward to have no contact with Hawkins.

## II. Appellate Review

{¶ 5} In his sole assignment of error, Ward asserts that his conviction for assault is against the manifest weight of the evidence because he acted in self-defense.

{¶ 6} When reviewing a judgment under a manifest-weight standard of review, "[t]he court reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [fact-finder] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed." *State v. Watkins*, 2010-Ohio-740, ¶ 17 (2d Dist.).

{¶ 7} "To establish self-defense, a defendant must introduce evidence showing that: (1) he was not at fault in creating the violent situation; (2) he had a bona fide belief that he was in imminent danger of bodily harm; and (3) he did not violate any duty to retreat or avoid the danger." *State v. Brown*, 2017-Ohio-7424, ¶ 24 (2d Dist.), citing State *v. Thomas*, 1997-Ohio-269, ¶ 2. Therefore, "[t]o support a claim for self-defense, a defendant must demonstrate that he acted out of fear, or he felt that his life was threatened." *Id.*, citing State

3

*v. Crawford*, 2008-Ohio-4008, ¶ 26 (2d Dist.). "The defendant is privileged to use that force which is reasonably necessary to repel the attack." *State v. Paschal*, 2001 WL 395354, *2 (2d Dist. April 20, 2001). "In instances where less than deadly force is used, the defendant need only show a fear of bodily harm, not of death or great bodily harm." *Brown* at ¶ 24. "There is no duty to retreat in cases involving non-deadly force." *Id.* at ¶ 25.

{¶ 8} Once a defendant has set forth sufficient evidence indicating that he acted in self-defense, "[t]he burden then shifts to the State to prove that the defendant did not act in self-defense." *State v. Bowen,* 2024-Ohio-1079, ¶ 12 (2d Dist.). "To accomplish this, the State must disprove beyond a reasonable doubt at least one of the elements of self-defense." *Id.*

{¶ 9} "Self-defense claims generally involve an evaluation of witness credibility." *State v. Rhoades*, 2025-Ohio-2358, ¶ 16 (2d Dist.). It was the province of the jury, as the trier of fact, to assess the witnesses' credibility and determine whether the State had proven beyond a reasonable doubt that Ward assaulted Hawkins. In reaching its verdict, the jury was free to believe all, part, or none of the witnesses' testimony. *State v. Peterson*, 2021-Ohio-3947, ¶ 27 (2d Dist.).

{¶ 10} Here, with respect to whether Ward was at fault for creating the violent situation, Hawkins testified that at the time of the incident, he was sitting in a chair at the kitchen table, and Ward was standing up, leaning against the counter. Ward acknowledged that he got angry when Hawkins confronted Lydia about why she put a hold on the mail, and Ward began yelling at Hawkins. However, Hawkins testified that the exchange only became physical after Ward approached where he was sitting. Hawkins's account is supported by the discovery of blood from his injuries on the floor next to the chair where he had been

sitting. From this evidence, the jury could have reasonably concluded that Ward was the aggressor and created the violent situation.

{¶ 11} Similarly, the evidence supports a reasonable conclusion that Ward did not have a bona fide belief that he was in imminent danger of bodily harm. Ward not only approached Hawkins first, but he also admitted that he had a "martial arts background." In recounting the fight with Hawkins, Ward spoke as if he was recalling a boxing match, not an attack on his personal safety. Ward claimed to have "countered" each one of Hawkins's alleged punches. Although Hawkins admitted to trying to push Ward out of his face when he approached him, Hawkins recalled that Ward did not move or otherwise react to the push, nor did Ward sustain any injuries. Indeed, Ward struck Hawkins repeatedly, injuring his eye and arm, which far exceeded the force necessary to repel any alleged "attack" by Hawkins. Finally, Ward was able to leave the scene immediately after the argument, leaving Lydia and his dog there. Considering these grounds to conclude that Ward was not acting out of a legitimate fear of bodily harm, the jury did not lose its way in convicting him.

{¶ 12} Ward's conviction for assault was not against the manifest weight of the evidence.

{¶ 13} Ward's assignment of error is overruled.

### III. Conclusion

{¶ 14} The judgment of the trial court is affirmed.

. . . . . . . . . . . . .

LEWIS, P.J., and HUFFMAN, J., concur.

5